## TETLEY v. McELMURRY, Appellant.

### Division One, February 22, 1907.

1. **EJECTMENT: Forfeiture: Contract.** A forfeiture of premises contracted to be sold to defendant in ejectment, cannot be based on a failure to pay debts not mentioned in the contract, nor upon plaintiff's inability to make a valid transfer of the premises on full performance by defendant; nor can forfeiture be allowed if when forfeiture was declared defendant was not in default in his monthly installments to be paid in purchase of the property.

2. ———: ———: ———: **Interest on Installments.** If the obligation of the purchaser to pay interest on the monthly installments to be paid may be spelled out of the very obscure contract of purchase, yet if the contract calls for a note, that note must be read into the contract; and if in the note it is written that "if the interest be not paid annually to become as principal and bear the same rate of interest," the penalty is not forfeiture, but compound interest.

3. ———: ———: ———: ———: **Interpretation of Contract.** Where the contract is equivocal, a recognized rule of construction is to seek out the construction the parties thereto placed upon it and apply that; and if the evidence shows that the running arrangement between plaintiff and defendant did not imply the payment of interest on the monthly installments as they became due, and no request for interest was made when they were paid, no forfeiture will be declared for defendant's refusal to pay interest on each monthly installment after a large number have been paid.

4. ———: ———: **Equity.** Forfeitures are abhorred, not favored, in equity. Courts of equity are slow to enforce them, and will do so only when the provisions of the contract strictly construed clearly call for a forfeiture.

5. ———: ———: **Improvements: Pleaded.** Ordinarily improvements are not an issue in ejectment. But if pleaded by way of estoppel to a forfeiture, or by way of reliance on a waiver as shown by a course of dealing in receiving monthly installments of the purchase price, evidence of valuable improvements is admissible in support of such pleas.

6. ———: **Installments: Tender: Refusal: Interest.** Where defendant in ejectment contracted to purchase real estate and pay for same by monthly installments, tender of installments refused by plaintiff operates to abate the interest thereon from the date of the tender.

Appeal from St. Francois Circuit Court.—*Hon. R. A. Anthony,* Judge.

REVERSED AND REMANDED *(with directions).*

*Jere S. Gossom* for appellant.

(1) Forfeitures are not favored by law, and all conditions and provisions in contracts providing for forfeitures must be strictly construed, and that construction adopted, if at all permissible, which will avoid the forfeiture. McCollum v. Ins. Co., 61 Mo. App. 352; Wheless v. St. Louis, 90 Mo. App. 106; Knight v. Orchard, 92 Mo. App. 466; Heman v. Wade, 140 Mo. 340; Garnhart v. Finney, 40 Mo. 460; Gratz v. Railroad, 165 Mo. 217. (2) The acceptance, by plaintiff, of the monthly payments without objection, for the period of thirty-one months, in which time he received from defendant the sum of $336.50, almost the entire amount of the consideration for said property, with full knowledge of the facts, was a waiver of all forfeitures (if any), which could not afterwards be asserted. Garnart v. Finneu, 40 Mo. 460; O'Fallon v. Kennerly, 45 Mo. 124; Nagel v. League, 70 Mo. App.

491. (3) Plaintiff, in his notice to defendant, dated March 27, 1901, refers to a former notice which he alleges he had served on defendant, in the following language, to-wit: "We sent you notice some time ago that your terms of contract had been broken." From the above facts it is manifest that plaintiff, with full knowledge, waived all his right to demand a forfeiture under said contract. (4) Plaintiff during the entire thirty-one months that he collected from defendant the monthly payments on said property of $10 per month, without objection accepted said payments and acquiesced in the manner in which they were made and never at any time demanded from defendant one cent interest or any other sum in excess of the $10 per month, yet notwithstanding this fact he claims a forfeiture because, as he says, defendant failed to pay the interest, lease rent, taxes and insurance each month. By such acts and conduct plaintiff led defendants to believe that $10 per month was all he expected him to pay. And by his acceptance of the $10 per month for so long a time, and by his acquiescence, waived his right (if any he had) to enforce a forfeiture under said contract for defendant's failure (if any) to pay said interest, lease rent, taxes and insurance. (5) One of the provisions of said contract provided that in case defendant made default of three monthly payments he should deliver unto plaintiff the possession of said premises, and if defendant had at the time paid plaintiff any sum of money in excess of $7 per month, said excess should be returned to him by plaintiff and the said sum of $7 per month should be retained by plaintiff as rent for said premises. This provision of said contract clearly shows that plaintiff could not enforce a forfeiture of said contract, without at the same time constituting defendant his tenant; which fact plaintiff admits in his notice to defendant, dated March 27, 1901; in which case plaintiff would be compelled to terminate said

tenancy before he could maintain ejectment. Tarlotting v. Bokern, 95 Mo. 541. (6) Plaintiff in his notice to defendant, dated March 27, 1901, used the following language: "You have not paid up as you should. You are now notified that our contract is ended. The Federal Lead Co., owner of the lease, has notified me that after March 11, 1901, under no circumstances will they consent to a transfer of a lease to any person or persons." Forfeitures are not favored, and when it is sought to enforce one under circumstances such as are disclosed by the record in this case, the court will scrutinize the contract and the conduct of the party seeking to enforce the forfeiture very closely to see if the party seeking the enforcement of the forfeiture has in very particular complied with the terms of the contract in both its spirit and letter. Knight v. Orchard, 92 Mo. App. 472.

*Pipkin & Swink* for respondent.

(1) The answer to appellant's first point is that he has never suggested any construction of the contract in question which would relieve defendant of the default he has made in his payments. Defendant admits that he has defaulted. Therefore, no construction of said contract, however liberal, can be called to his assistance, and the question of how it shall be construed is not an issue. An action may be maintained without any entry or demand for possession. Ellis v. Kyger, 90 Mo. 600. Where one going into possession of land under contract of sale makes default in the payment of the purchase money, the vendor may recover the premises in ejectment. The vendee in such action can defend his possession only by showing the performance of the contract on his part. DeBernardi v. McElroy, 110 Mo. 65; 10 Am. and Eng. Ency. of Law 496. (2) Defendant in his answer pleaded performance of

his contract and the trial proceeded on that basis. Now, upon appeal, we hear for the first time the question of waiver. However, the law in Missouri is that one cannot plead performance and show waiver of performance except in insurance cases. 4 Ency. Pl. and Pr., 631. (3) Plaintiff did not waive the right to insist upon performance. Williams v. Railroad, 153 Mo. 519. An examination of the evidence will disclose that no act of plaintiff's was inconsistent with his insistence upon performance. In other words, plaintiff did nothing that would stop him from insisting upon performance. Waiver depends on what one intends to do, and the question whether such intention exists is one for the jury. The court sitting as a jury found there was no waiver. Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 53.

LAMM, J.—Plaintiff sued defendant in ejectment (in conventional form) in the circuit court of St. Francois county for "Leased lot No. 1 in Block 'C' of East Flat River, Missouri," laying his ouster as of April 1, 1901. An equitable answer was interposed asking affirmative relief, thus putting the case in equity. A decree went for plaintiff, from which defendant appeals.

It seems plaintiff owned a leasehold in said lot, running for a term of twenty years at a ground rent of ten dollars per year, payable quarterly; that he built a dwelling house thereon, and presently entered into a contract with defendant to become the purchaser of his right in the premises at a consideration of $400. Defendant was a miner, living on a daily wage, and, the record shows, could read "a little bit." Plaintiff was a business man — a lumber dealer at Bonne Terre, Missouri — and part of his business was that of building, selling and renting houses and collecting installments of rent and purchase money. Plaintiff, with his own

pen, drafted an eminently formidable and complicated contract, empty of punctuation, but full of obscurity, forfeitures and perplexity, which the miner signed and which we produce here for the double purpose of showing its terms and as an example — to be avoided.  The instrument reads:

"Articles of agreement made this day between F. I. Tetley and James McElmurry both of St. Francois county Mo.—Witnesseth that the said Tetley for the sum of three hundred and sixty dollars together with such lease rent and repairs insurance and interest that may accrue to convey his Right to a certain leased lot No. 1 in Block 'C' of East Flat River leased from the F. M. a. P. Co. to be paid as follows 10 Ten dollars and interest due each and every month until on or before the 10th of each month at the office of F. I. Tetley in Bonne Terre as agreed by the Promisory note of even date the said Mc.Elmurry Promising in case he makes default of three monthly payments to deliver unto the said Tetley or his Representative full and complete Possession of the above Premises and this agreement as soon as this is done the said Tetley if any money had been paid in excess of seven dollars per month said seven dollars per month shall be for the monthly rent of the premises to return such excess this shall be the same in case of sale before paid the said Tetley to have the Right of Refusal at the terms before mentioned but in no case shall sale be made without the written consent of Tetley thereto this shall be ended if not paid or broken on or before the first day of December 1901, by the said Mcelmurry delivering unto the said Tetley or his Representative without any written notice or demand whatever any holding over after that time or the time before mentioned or moneys paid not to be considered as renewing this agreement unless a New agreement is made this is to be considered as ended if suit has to be brought for Possession the said Tet-

ley to retain in addition to rent the cost of suit and a reasonable attorneys fees in case of fire and there be an insurance and it received the said Mcelmurry to Receive his Proportion to the Amt paid and Received the said Tetley Promising not to molest the said Mcelmurry in his Possession of the above Premises as Long as the requirement of this agreement are complied with in witness whereof we have hereunto set our hands and seal in Presence of and for each other this 25th day of July 1898.''

It seems that when this contract was signed plaintiff supposed defendant had so much as $40 in his pocket which he would hand over, and, therefore, the sum mentioned in the contract is $360. However, it was not so. He had but $10 by him, which he gave plaintiff. Several days after signing this contract, to-wit, on August 1, 1898, the transaction was consummated by executing the note called for in the writing, as follows:

''390.00.        Bonne Terre, Mo., Aug. 1st, 1898.

''Within thirty-six months after date I promise to pay to the order of Frederick I. Tetley, in monthly payments of $10.00 and interest, due each and every month until paid, three hundred and ninety dollars. For value received, negotiable and payable without defalcation or discount and with interest from date at the rate of eight per cent per annum, and if the interest be not paid annually to become as principal and bear the same rate of interest.        JAMES McELMURRY.''

It will be observed that the face of the note calls for the $400 consideration, less the $10 paid when the contract was drawn, and the fact that it calls for $30 more than the sum mentioned in the contract is thus accounted for. During the month of August of that year, McElmurry paid Tetley $25. Possession was not delivered until the 1st of September, and Tetley collected $6 rent of one Cook, his tenant then in possession,

and which became due after the contract was entered into. Tetley claims that by verbal understanding the possession was not to be delivered until September, and, by the same token, that Cook's rent for the month of August was to go to him (Tetley). McElmurry does not agree this was the understanding, but he says that Tetley appropriated this rent, and by so doing he received more than the $40 advance payment. Taking into account said rent from Cook, it stands practically conceded that McElmurry paid to Tetley on the foregoing note and contract, in the ensuing thirty-one months, the sum of $342.50. The evidence shows that by a working arrangement Tetley did not stand on the punctilio of exacting payment at his office in Bonne Terre. He seems to have been collecting monthly installments of money from divers and sundry other people in the McElmurry neighborhood and, accordingly, collected McElmurry's installments at his own home. The evidence establishes the fact that during said thirty-one months McElmurry practically paid $10 each month, missing a month two or three times, and then paying in augmented amounts to catch up. At no time prior to March, 1901, was any demand made on him for a monthly payment of interest, or for ground rent, or for insurance. It seems Tetley carried insurance on the house in his own name; that this insurance was in existence at the inception of the contract, and that it was renewed once during these thirty-one months; and during that time Tetley paid the ground rent. It will be seen that if-the $40 advance payment is deducted from the gross sums paid by McElmurry there will be left $302.50 to apply on the $360 mentioned in the contract; and at $10 a month McElmurry at the end of thirty-one months would be behind but a trifling sum —barring interest, ground rent and insurance. At the end of these thirty-one months Tetley refused to receive any more money. His monthly installments were

tendered him, but he claimed and stood upon a forfeit-
ure and demanded possession. He exacted this forfeit-
ure on the theory that McElmurry owed him thirty-
one installments of interest; on the fact that he owed
a small lumber bill; on the fact that he owed
him ground rent and insurance. But we cannot shut
our eyes to the fact that other reasons existed; for in-
stance, trouble was brewing in that Tetley's own les-
sor had changed its policy in regard to permitting
transfers of leases; and Mr. Tetley saw ahead of him
the danger that he might be unable to comply with his
contract to transfer the leasehold, although McEl-
murry might fully perform his agreement. According-
ly, he caused to be served on defendant the following
notice:

### "F. I. TETLEY,

CONTRACTOR AND BUILDER.

DEALER IN

*Lumber, Lath, Lime, Hair, Cement,*
*And All Kinds of Builders' Material.*

"Bonne Terre, Mo., March 27, 1901.

"Mr. James Mcelmury Flat River Mo Dear sir we
sent you notice some time ago that your terms of con-
tract had been broken you have not paid up as you
should you are now notified that our contract is ended
the Federal Lead Co owners of the leases has notified
me that after March 11th 1901 under no circumstances
will they consent to a Transfer of a Lease to any Per-
son or Persons. Whenever you move out as agreed if
there has been any money paid over the seven dollars
per month rent it will be returned to you, and you will
be charged seven dollars per month rent until you re-
move your Respectfully,          F. I. TETLEY."

Defendant's answer was a general denial; and,
furthermore, the foregoing contract was pleaded and

that plaintiff for the purpose of cheating and defrauding defendant refused to accept monthly installments, though these were repeatedly tendered to him; that defendant was ready and willing to pay all sums due under the contract; that with plaintiff's knowledge and with the expectation that the leasehold would be assigned and delivered to him, he had expended large sums of money in improving the property; and tender was made by the answer of all sums of money found by the court to be due plaintiff according to the terms of the agreement. Relief was prayed that the court would determine the amount due plaintiff and that he be required to accept the same and to assign the lease to defendant and bring into court the promissory note, make proper indorsements thereon and surrender the same upon payment of the amount found due by the court.

By his replication plaintiff admitted making the contract dated July 25, 1898, pleaded in defendant's answer, but alleged that defendant had failed and refused to perform the conditions of said contract; that a default had existed for more than three months before March 27, 1901, at which time plaintiff declared defendant's rights under the contract forfeited and demanded possession.

To this replication defendant (out of abundance of caution) filed "a general denial," thereby paying the latest tribute (coming to our notice) to the wisdom of the common law fathers in their Declarations, Pleas, Replications, Rejoinders, Surrejoinders, Rebutters, and Surrebutters — not to mention their *Similiter* and their "doth the like" by putting themselves "on the country."

One of defendant's contentions here is that by receiving thirty-one ten-dollar monthly installments without protest, plaintiff waived the forfeiture, if any, under the doctrine of Garnhart v. Finney, 40 Mo. l. c. 460,

and many other cases. To this contention plaintiff's learned counsel replies that waiver should have been pleaded, and that, failing to plead such affirmative defense, no question of waiver is in the case, under the doctrine of McCullough v. Insurance Co., 113 Mo. l. c. 616, and many other cases.

It has been held in replevin that as "a general denial puts in issue plaintiff's right to the possession of the property at the commencement of the action and every collateral fact necessary to establish the same," a waiver may be shown under such general denial. [Oester v. Sitlington, 115 Mo. l. c. 257.] Under a general denial in ejectment, it has been held (contrary to the general rule) that the Statute of Limitations may be invoked without pleading the same. [Nelson v. Brodhack, 44 Mo. l. c. 599, *et seq.*] Moreover, as ejectment goes to the possessory right to real estate precisely as a replevin suit goes to the possessory right to personalty, for like reason it might well be held on the authority of the Oester case, *supra*, that as Tetley's right to possession grew out of a forfeiture, then, if the forfeiture be waived and become as though dead, the right to possession (an incident) is dead also. The general issue in ejectment suits is much favored in the law, and the rule is stated broadly by Sedgwick & Wait (Sedg. & W. on Tr. of Tit. to Land (2 Ed.), sec. 476), to be as follows: "It is certain that a most liberal tendency existed and still prevails in the courts, and in modern legislation, to favor this plea, and to admit evidence of available legal defenses of almost every class or nature under it." But from what follows it is not necessary to decide the foregoing question in this case.

In my opinion there is not a particle of equity in plaintiff's case on the merits, regardless of waiver, because I have been unable to put my finger on a forfeiture. This is so, because it is obvious that a for-

feiture cannot be based on a failure to pay the lumber bill, nor can a forfeiture arise merely as a shelter to protect plaintiff from liability based on any inability to make a valid transfer of the leasehold on full performance, as hinted in his notice of March 27, 1901. Furthermore, when the forfeiture was declared and plaintiff refused to receive further installments, defendant was not in default three months on his $10 payments. Therefore, no forfeiture could be declared on that account.

It is by no manner of means easy to get at the meaning of the contract; but, eyed however closely, it cannot be found written there that a forfeiture is declared upon failure to make monthly payments of the ground rent money and insurance premiums paid out by plaintiff during the life of the contract.

The case finally comes to this: If a forfeiture is to be declared, it must be because defendant failed in every single month for thirty-one consecutive ones to pay the increment of interest due on the consideration. On this point it is insisted by plaintiff's counsel that a duty to pay the interest in monthly installments is written in the contract. It may be such duty can be painfully spelled out in one corner of the contract. But there are more corners than one visible to the eye of a chancellor in such a contract as this. For example, the note is called for in the contract — *ergo,* it must be read into the same; and in that note it is written that "if the interest be not paid *annually* to become as principal and bear the same rate of interest." The presence of that provision in the note is not to be ignored, because thereby it is contemplated that interest may be paid annually, and, moreover, if not paid annually the penalty exacted is (not forfeiture, but) that it should be compounded. 'Tis so nominated in the bond — no more, no less.

Again, where a contract is equivocal (as this must

be held to be when the note is read into it) a recognized canon of interpretation is to seek out the construction the parties to the contract placed upon it themselves and apply that; and when the evidence is looked into, it shows that the running arrangement between plaintiff and defendant did not involve the payment of interest from month to month. No such request was made of defendant at any time. Plaintiff was prompt and persistent in demands, but interest was not one of them. The course of dealing between these men from month to month was such as to show that the construction placed on that contract by them was that it was optional in defendant to pay the interest monthly, annually, or when the end came. To exact a forfeiture under such conditions would be to trap defendant, and miss the justice of the case.

Forfeitures are abhorred, not favored, in equity. It has been said that courts of equity do not lend their aid to enforce them; at least, that courts of equity are slow to enforce forfeitures and will (if that construction be at all permissible) so construe a contract as to preserve, rather than to disturb a party's rights; that good conscience is the beaconlight which points the way out of a forfeiture; that while provisions for forfeitures should not be abrogated, yet they should be strictly construed, and never helped out by implication. [Dezell v. Fidelity & Casualty Co., 176 Mo. l. c. 265; Boyce v. Royal Circle, 99 Mo. App. l. c. 356; Wheless v. St. Louis, 90 Mo. App. 106; Knight v. Orchard, 92 Mo. App. 466; Heman v. Wade, 140 Mo. 340; Sease v. Cleveland Foundry Co., 141 Mo. 488; Moberly v. Trenton, 181 Mo. l. c. 645, et seq.; Watson v. Gross, 112 Mo. App. 615; McCollum v. Ins. Co., 61 Mo. App. 352; Messersmith v. Messersmith, 22 Mo. 369; see, also, Big Six Development Co. v. Mitchell, 138 Fed. 279.]

Defendant tendered proof of the allegation in his answer that he had made valuable improvements on

the strength of his contract. This evidence was rejected, and defendant saved an exception. His learned counsel argues here that this was error. Ordinarily, improvements are not an issue in ejectment. If made without notice of an adverse claim, they may be recovered in a timely subsidiary proceeding. [R. S. 1899, secs. 3072, *et. seq.*] If defendant had plead improvements by way of estoppel to a forfeiture, or by way of reliance on a waiver as shown by a course of dealing in receiving monthly installments, etc., then the evidence of valuable improvements would be admissible on such issue. We take it this was what was meant by the allegation in the answer, though the idea was scantily expressed. But the whole question becomes academic in view of what has been said and the disposition to be made of the case and need not be further pursued.

The decree in this case was for the wrong party and is, therefore, reversed and the cause remanded with directions to the court below to enter judgment against plaintiff and to state an account between plaintiff and defendant. In so doing the lumber bill should not be included; but insurance premiums and ground rent paid out by plaintiff should be included. The Cook rent, having become due after the contract, belongs to defendant, and he should receive credit therefor. The chancellor should ascertain and adjudge how much is back on the contract price, including interest — the latter, however, to be computed at eight per cent on the theory of annual, not monthly, payments, and compounded. In the computation of interest, defendant should be allowed the advantage accruing in the law from his tenders of installments refused by plaintiff — that is, the amounts tendered from time to time should operate to abate the interest *pro tanto* from the respective dates of the tenders on that much of the price. On the question of tender, and to fix the amounts and dates thereof, the chancellor may hear further evidence.

It must be decreed, furthermore, that, on defendant's payment into court for the use of plaintiff, by a certain day to be fixed by the chancellor, of the amount so found due, plaintiff must surrender defendant's note as cancelled and transfer to defendant the leasehold estate in question and all plaintiff's right and title to the leasehold improvements. Costs to follow the decree against plaintiff.

All concur.