# Brown's Executor, et al. v. United States Trust Co.

(Decided November 21, 1919.)

## Appeal from Shelby Circuit Court.

1. Landlord and Tenant—Death of Tenant—Does Not Terminate Lease.—When a lessee of property dies his death does not terminate the lease.

2. Landlord and Tenant—Death of Lessee—Duty and Liability of Personal Representative in Respect to Leased Premises.—When a lessee under an ordinary rental contract dies, the leased property comes into the possession of his personal representative and he has only three rights of election in respect to it: (1) He may keep the property thereby charging the estate with the performance of the terms and conditions of the lease. (2) He may sublease the premises, but this will not relieve the estate of its obligations under the lease. (3) He may surrender the leased premises thereby cancelling the lease, but this course would subject the estate to a suit for damages by the landlord for breach of contract.

3. Landlord and Tenant—Death of Tenant—Rent Not a Preferred Claim Against the Estate.—When the lessee of real property dies and the property passes to his personal representative the rents except as provided by statute, are not entitled to a preference over other general debts in the distribution of the estate.

4. Landlord and Tenant—Death of Tenant—Rent Due by Tenant Not a Preferred Claim Against the Estate.—Section 3868 of the Kentucky Statutes providing that the "cost and charges of the administration" shall be a preferred claim against the estate of a decedent refers to such "cost and charges" as are necessarily incurred by the personal representative in the settlement of the estate, but do not embrace ordinary contract obligations of the decedent that the personal representative is under a duty to discharge out of the assets of the estate; although the expense incurred by the personal representative in looking after leased premises that came into his possession would be a preferred claim as a part of the cost of the administration to the same extent as would expenses incurred by him in looking after any other business of the estate.

5. Landlord and Tenant—Lien of Landlord on Income of Leased Premises.—Under section 2317 of the Kentucky Statutes providing that a landlord shall have a superior lien "on the produce of the farm or premises rented" the landlord has a superior lien on the net income derived by the lessee from the rented premises as this income is a part of the "produce" of the premises rented. But this superior lien of the landlord does not extend to other property of the tenant and when he has exhausted the property on which the statute gives him a superior lien, the remainder, if any, of his claim becomes an ordinary debt and this provision

of the statute applies to leased premises that come into the hands
of the personal representative.

BEARD and PICKETT for appellants.

GROVER G. SALES and ROBERT N. MILLER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—
Reversing.

R. M. Brown died testate in Shelby county in July,
1916. Shortly after this his will was probated and the
Peoples Bank & Trust Company appointed executor. He
owned considerable property, real and personal, but his
estate was heavily encumbered with lien debts, aside
from which there were many unsecured creditors, and it
is conceded that the general creditors can not be paid in
full nor will there be anything for the devisees.

In December, 1913, Brown leased for a period of ten
years and thirteen days or to December 31, 1923, a three
story building on Main street in Shelbyville, Kentucky,
from the United States Trust Company. Under the con-
tract of tenancy Brown was to pay an annual rental of
$3,000.00 and in addition all taxes, insurance and re-
pairs, making the rental in the aggregate amount to
about $4,000.00 a year. To better secure the payment of
the rent charges and other expenses and protect the
lessor against loss Brown mortgaged to it certain real
estate located in Shelbyville. When he died in July,
1916, the lease had about seven years and five months
to run.

In July, 1917, the executor brought this suit for a
settlement of the estate and in its petition asked the ad-
vice of the court concerning certain matters that had
come up between it and the landlord, among which was
the claim of the landlord that the executor must carry
out all the terms and conditions of the lease made with
Brown, and also its contention that the rentals and other
expenses due and payable under the contract of lease
were preferred claims to be paid out of the general estate
in the hands of the executor before the creditors re-
cived anything.

Another question was whether the executor had the
right to terminate the lease which it expressed a willing-
ness to do.

Other issues raised in the case relate to a controversy between the executor and the landlord as to which was liable for certain repairs and alterations made on the leased property after it came into the hands of the executor. The question, however, as to whether the executor or the landlord should pay the expense of the alterations and repairs appears to have been adjudged to the satisfaction of both parties by the lower court. At any rate neither of them is complaining on this appeal about the judgment in this respect.

So that the only questions we need to consider on this appeal are, first, whether the executor as tenant may surrender the property to the landlord thereby terminating the lease, or second, if it may not do this, has the landlord a preferred claim for the rents and other charges that will be due and payable under the contract, and must these rents and charges be paid out of the general estate in the hands of the executor as part of the costs of administration before the creditors receive anything therefrom?

The lower court adjudged that the landlord had a preferred claim against the estate for rent and other obligations due under the rent contract and that these amounts should be paid by the executor as a part of the cost of administering the estate for such time as the executor might hold the property under the lease. The judgment did not determine whether the executor could surrender the property and thereby cancel the lease, but as this question is made in the case and discussed by counsel in their briefs it should be settled on this appeal.

The executor took charge of the estate and the leased premises shortly after the death of Brown, and it appears from the judgment that there was due and unpaid rentals amounting on December 31, 1917, to $2,500.00, which sum was adjudged to be a preferred claim and directed to be paid by the executor out of the estate in his hands as a part of the cost of administration.

As the lease by its terms did not expire until January 1, 1923, and the annual amount due for rent and other expenses was about $4,000.00, it will be seen that the executor under the judgment would be required to pay in addition to the $2,500.00 mentioned in the judgment $4,000.00 a year for five years, which sums under the judgment would be preferred claims and payable out

of the estate in the hands of the executor as part of the cost of administration.

It appears from the record that the gross annual income received by the personal representative from the leased property is about $4,680.00 and that the yearly expense incurred by the personal representative in connection with the premises is $1,215.87, leaving a net income from the leased estate of $3,464.13. It also appears, as we have before said, that the annual rent and the other expenses stipulated in the contract amount to some $536.00 more than the income derived from the property at the present rentals.

Although it is conceded that the leased property has been well managed by the executor it will be seen that it is a burden and not a benefit to the estate and that if the lease is continued with no increase in the income that has been derived from it thus far, there will be a yearly deficit that must be met by the executor out of the estate, aside from the fact that its continuance will delay a final settlement of the estate until the lease is terminated according to its terms.

There does not seem, however, to be any legal way through which the estate may be relieved of this expensive and embarrassing condition without subjecting it to the damages that would accrue if the executor surrendered it to the landlord and refused to further perform its conditions, thereby in effect working, on his election, a cancellation of the lease, unless he could sublease it to persons under a contract that would satisfy the terms of the lease contract.

In other words, when a lessee of property like this dies the leased property comes into the possession of his personal representative and he has only three rights of election in respect to it. First, he may keep the property, thereby charging the estate with the performance of the terms and conditions of the lease. Second, he may if the contract or statute permit it sublease the premises, but this would not of course relieve the estate of its obligation to satisfy the terms and conditions of the lease as between it and the landlord. Third, he may surrender the leased property to the landlord and refuse to have anything further to do with it, thereby working a cancellation of the lease, but the doing of this would sub-

ject the estate to a suit for damages by the landlord for breach of the contract.

We say this because, although we have not been able to find any cases from this court on the subject, it is well settled by the authorities that a contract of this character is not terminated by the death of the lessee and that his estate continues liable for the performance of the conditions of the lease until it expires. It is also generally agreed that the obligations of a lessee under the contract passes on his death to his personal representative who assumes in his fiduciary capacity the performance of the contract in the same manner that its performance could have been demanded of the lessee. 16 R. C. L. page 855; Underhill on Landlord and Tenant, vol. 1, page 619; 18 Cyc. 239-242, 312; 24 Cyc. 1340; Becker v. Walworth, 45 Ohio St. 169; Alsup v. Banks, 68 Miss. 664, 24 A. S. R. 294, 13 L. R. A. 598; Hoagland v. Crum, 113 Ill. 365, 55 Am. Rep. 424; Rihn v. Mangenberg, 89 Cal. 268.

Accordingly the personal representative can no more surrender or terminate the lease without the consent of the landlord than could the lessee himself, and if the personal representative does terminate the lease by refusing to perform its conditions the landlord may bring a suit against him and recover from the estate damages in the same amount that he could have recovered from the lessee if he had broken or refused to perform the contract. In other words, the personal representative takes the place in the contract of his deceased lessee and assumes in his fiduciary capacity all the liability that the lessee assumed in entering into the contract.

The rights, duties and obligations stipulated in the lease having thus come to the executor to be discharged by him, the question is whether the rentals and other charges against the lessee were preferred claims against his estate to be paid as a part of the costs of the administration or if not what is their status and out of what funds in the hands of the executor should they be paid.

It is provided in section 3868 of the Kentucky Statutes, that:

"If the personal estate of a decedent be not sufficient to pay his liabilities, then the burial expenses of such decedent, and the cost and charges of the administration of his estate, and the amount of the estate of a dead

person, or of a ward, or of a person of unsound mind, committed by a court of record to, and remaining in the hands of, a decedent, shall be paid in full before any pro rata distribution shall be made; but this preference shall not extend to a demand foreign to this state. All other debts and liabilities shall be of equal dignity, and paid ratable in the administration of his estate, and should more than the ratable share of any debt be paid, his personal representative shall only receive credit for its proper proportion.''

It will be seen that this statute makes no mention of rentals as a preferred claim, and so unless the rents and other expenses the lessee assumed in the contract can properly be charged as a part of the cost of the administration of the estate of Brown they are not entitled to a preference over other debts in the distribution of the estate; and whatever remains due after applying to their payment the net income derived by the personal representative from the leased premises becomes an ordinary debt against the estate to be paid ratably with other like debts of the decedent in the administration of the estate.

The provision in the statute that the ''cost and charges of the administration'' of an estate is a preferred claim, refers to such cost and charges as are necessarily incurred by the personal representative in the settlement of the estate, such as court costs, attorneys' fees, the compensation of the personal representative and other necessary incidental expenses that he may be put to in the discharge of his fiducial duties, but do not, as we think, embrace ordinary contract obligations of the decedent that the personal representative is under a duty to satisfy out of the assets of the estate. We therefore do not find any good reason why a contract of lease, which falls within the class of ordinary contracts, made by a decedent that the personal representative is under a duty to perform, should occupy a more favorable position in the distribution of the assets of the estate than any other contract made by the decedent that the personal representative acting in his place is under a duty to perform. Although the expense incurred by the personal representative in looking after leased premises that came into his possession as a personal asset of the estate would be a preferred claim as a part of the cost and charges of the administration to the same extent as

would expenses incurred by him in looking after any other business of the estate, this does not mean that the claim of the landlord or lessor must be given a preference in the distribution of the estate, further than is allowed by the statute, over the claim of any other creditor.

But of course what we have said does not mean that in this case the landlord may not look for payment of the whole or any part of his debt to the statutory remedies and liens given a landlord against the property of the lessee and the subtenants on the leased premises, or that the lessor in this case may not look to his mortgage lien for the payment of the rentals and charges stipulated in the contract or any part thereof.

We think, however, that the landlord, aside from and independent of any other liens he may have under and by virtue of statutory provisions on property on the leased premises, should also have a superior lien on the net income received by the personal representative from the use or rentals of the leased premises, and that the personal representative should pay this income to the landlord in part or full satisfaction as the case may be of the obligations of the lease contract.

The statute in section 2317 provides in part that "a landlord shall have a superior lien on the produce of the farm or premises rented, on the fixtures, on the household furniture and other personal property of the tenant, or under tenant, owned by him after possession is taken under the lease," and under this statute the landlord has a superior lien on the income derived by the lessee from the rented premises as this income less the necessary expense that the lessee must incur in maintaining the leased premises in a condition suitable for their use and occupancy, or that he must incur or assume as a part of the contract of leasing them if he does this is a part of the "produce" of the leased premises.

But this superior lien of the landlord does not extend to other property of the tenant, and when the landlord has exhausted the property on which the statute gives him a superior lien the remainder due on his claim, if any, becomes an ordinary debt against the tenant to be paid ratably with other debts of like character.

The death of the lessee should not put the landlord in any better position than he would have occupied if the

lessee had not died; but if the whole of the rents and other obligations due under the lease contract should become a preferred claim against the estate of the decedent independent of its preference under the statutory provisions giving the landlord a superior lien, it is evident that the landlord would be given a preference over unsecured as well as lien creditors, on the whole estate of the decedent, when as against the tenant he would only have the superior lien and preferred claim given by the statute to landlords.

Having the view of the law applicable to the case as we set it out it follows that the court erred in adjudging that the claim of the lessor must be paid as a part of the costs of administration.

Wherefore the judgment is reversed with directions to proceed in conformity with this opinion.