# Fortunato *v.* Shenango Limestone Co., Appellant.

*Landlord and tenant—Lease—Termination—Death of lessee—*
*Chattel passing to executor or administrator—Rights of widow re-*
*maining in possession—Covenants of lease—Use of private ways on*
*lessor's land—Negligence—Fall of wall—Permissive way—Berry*
*pickers—Act of God—Case for jury.*

1. As a rule a lease for a term of years, or from month to month, is not terminated by the death of the lessee before the expiration of the then current term. It is a chattel passing to the personal representatives of the lessee, in which his widow has no right of dower, or any right except as it is a part of the estate.

2. If the widow remains in possession after the death of the lessee, without raising an administration, and continues in possession without paying rent, and without any rent being demanded of her, she is not a trespasser, whatever may be the nature of her tenancy.

3. In such case she is not bound by a covenant in the lease providing that the lessee should not himself use the private ways over the lands of the lessor, nor permit any member of her family to do so.

4. The widow and her family may use such private ways as were usual and incident to the enjoyment of her tenancy.

5. Where a son of the widow in passing along a private way on lands of the lessor, is killed by the fall of an insecure wall negligently left standing too near the path, the mother may recover for his death, if it appears the employees of the lessor and the wives and children used such path without objection.

6. In such case the mere fact that the boy was coming from picking berries on lessor's property where he had no right to be, would not lessen the measure of care which the lessor must exercise at the dangerous location.

7. Where the evidence is disputed as to the character of a storm, whether or not it is an act of God, is for the jury.

Argued October 1, 1923.   Appeal, No. 23, Oct. T., 1923, by defendant, from judgment of C. P. Lawrence Co., Sept. T., 1919, No. 114, on verdict for plaintiff, in case of Mary Fortunato v. Shenango Limestone Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Trespass for death of plaintiff's son.   Before EMERY, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff, on which judgment was entered for $2,500.   Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment n. o. v., quoting record.

*J. Norman Martin,* of *Martin & Martin,* for appellant. —There was no question for the jury as Luigi Fortunato was a trespasser: Fitzpatrick v. Penfield, 267 Pa. 564.

The accident was an act of God: Long v. R. R., 147 Pa. 343; Lehigh Bridge Co. v. Coal & Nav. Co., 4 Rawle 9; Lovering v. Coal Co., 54 Pa. 291; Pitts., Ft. W. & C. Ry. v. Gilliland, 56 Pa. 445; Baltimore & Ohio R. R. v. School Dist., 96 Pa. 65.

The rule that a person is not liable for injuries inflicted on a trespasser in the absence of wanton neglect of duty of ordinary care applies likewise to trespassing children: Brague v. Ry., 192 Pa. 242; Mitchele v. R. R., 132 Pa. 226; Flower v. R. R., 69 Pa. 210; McMullen v. R. R., 132 Pa. 107.

While the lessee was not created a guardian or custodian of defendant's lands, the agreement covered his duties so far as his own family was concerned, and plaintiff, continuing to occupy under this lease, was bound by its obligation. She agreed that her children would not trespass on the lands of defendant.

*James A. Chambers,* for appellee.—This lease was a personal covenant made with Genaro Fortunato and did not extend to his personal representatives: Quain's App., 22 Pa. 510; Wertz v. Klinger, 25 Pa. Superior Ct. 523; Scully v. Kirkpatrick, 79 Pa. 324; Blakely v. Sousa, 197 Pa. 305.

The case was for the jury on the question of negligence: Gawronski v. McAdoo, 266 Pa. 449; Francis v. R. R., 247 Pa. 425; O'Leary v. R. R., 248 Pa. 4; Counizzarri v. R. R., 248 Pa. 474; Toner v. R. R., 263 Pa. 438; Daltry v. Media, etc., Co., 208 Pa. 403; Duffy v. Iron Works, 210 Pa. 326.

OPINION BY MR. JUSTICE KEPHART, January 7, 1924:

As a rule, a lease for a term of years, or from month to month, is not terminated by the death of the lessee before the expiration of the then current term. It is a chattel passing to the personal representatives: Keating v. Condon, 68 Pa. 75; Culbreth v. Smith, 69 Maryland 450, 16 Atl. 112; Mayor v. Mabie, 13 N. Y. 151, 159;

Inches v. Dickinson, 2 Allen (84 Mass.) 71. A widow has no right of dower therein or any right in such lease except as it is a part of the estate.

When appellee's husband died, the lease under which possession of the house was held by the widow did not terminate. The estate was liable for the accrued rent to the end of the then current term: Rainow's Est., 4 Kulp 153. As no administration was raised by which the estate could be further bound through the exercise of any option incident to its renewal or on which possession might be predicated, the holding over by the widow did not have the effect of continuing the lease so as to affect the estate. She did not act as administratrix, though entitled to letters; she may be liable for use and occupation to the estate for the rent it might be compelled to pay during her occupancy to the end of the current term, at which time such liability ceased.

While plaintiff's husband was lessee for one month of a property owned by defendant, the lease provided that in the absence of three days' notice, by one or the other of the parties, the tenancy should continue for another month, and so on from month to month until such notice was given, and that the lessee would not himself use the private ways or roads through and over other lands of the lessor or allow, suffer or permit the members of his family to do so; the widow's holding possession, after the husband's death and after the then existing term, did not continue such lease as to her, or bind her by its terms. She continued in possession but did not pay any rent, nor did defendant demand any, each apparently willing to let the existing status remain. Whatever may have been the nature of the tenancy, and as to this it is unnecessary for us to decide, she was not a trespasser, and her use and occupation of the land was permitted by defendant under a color of right, such as occupancy after termination of a, lease, or after notice to quit on sheriff's sale, or after death of a life tenant who has made the lease: Carr v.

H. W. Johns-Manville Co., 60 Pa. Superior Ct. 500; Keown v. Mallissee, 57 Pa. Superior Ct. 592, 596; Tourison v. Engard, 30 Pa. Superior Ct. 179, 181, and authorities cited.

The status thus established continued until after the happening of the accident on which this suit is predicated. Her rights as a tenant were those usual and incident to this property. Among these rights was that of using the paths and privateways in and upon the land. This did not give an unlimited right to roam indiscriminately over lessor's land, but was confined to what was necessary to the proper enjoyment and comfort of the estate held.

There was a path running by the engine house on appellant's land. It is in evidence that all employees, women tenants and their children, used the paths in and about the property, and used this particular path. No objection was made to such practice, and it seems to have been recognized by defendant, apart from anything contained in the husband's lease having a tendency to restrict the use of the property. The superintendent stated there never was any objection to the employees, their wives and children using these paths; an effort was made, however, to keep them off the cultivated land. Children used this way and others to carry meals to their parents at work, and for visiting purposes. The jury could very well find it appurtenant to the premises occupied by plaintiff.

An engine house was burned June 7th; one broken, cracked wall remained standing. On the 13th of June appellee's son, a child of ten, used this path in returning from picking strawberries at a place where he had no right to be, and while passing the ruins of the burned building the wall fell, crushing him to the ground and killing him.

Appellant owed to him, and others lawfully on the path in proximity to the obviously defective standing wall, the duty of ordinary care. It could not permit a

dangerous agency to be close to one of the ordinary means of ingress and egress to the premises leased without subjecting itself to liability for injury caused to those lawfully in the vicinity. The mere fact that the boy was coming from a place on defendant's property where he had no right to be would not lessen the measure of care which appellant must exercise at the dangerous location. It is not relieved of responsibility merely because the boy used this way in returning from some property where he was a trespasser. The crux of the case is, he had the right to use this path in the enjoyment of the property occupied by his mother. Such use is not circumscribed by what was done before he reached it.

We do not for a moment assent to the doctrine that permissive ways may be established over farm lands in any and all directions that the indulgence of neighbors permit. To do so would compel neighboring farmers to close up convenient paths which lead to and from farm lands, thus destroying the neighborly feeling now existing. Nor should the doctrine of permissive ways be stretched to an absurdity, so as to place the owners of wild lands, frequented by berry-pickers, in the position of being responsible for accidents happening because of some defect in the paths made through those lands. Along the mountain sides and in the many places throughout the Commonwealth where berries grow will be found well beaten paths, made by the pickers without hindrance or disturbance from the owners. We emphasize this because the judgment of the court below can be affirmed on the ground that the way in question was appurtenant to the property and the boy had a right to be where he was.

Appellant claims the storm which caused the wall to fall was an act of God, but, as stated in Fitzpatrick v. Penfield, 267 Pa. 564, where the evidence is disputed the question is for the jury. The same is true as to notice of the wall's condition,—it remained standing for six days after the fire.

The judgment of the court below is affirmed.