MONTANA CONSOLIDATED MINES CORPORATION, Appellant, *v.* O'CONNELL, Administrator, et al., Respondents.

(No. 7,782.)

(Submitted September 30, 1938. Decided November 17, 1938.)

[85 Pac. (2d) 345.]

*Mr. John W. Mahan,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* for Respondents, submitted a brief; *Mr. Ford* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

November 10, 1931, Montana Mines Corporation, predecessor of the plaintiff, entered into a lease contract with Samuel J. O'Connell, by which plaintiff leased to O'Connell certain mining property situated in Broadwater county "for the period of two years from and after the execution of this contract with the privilege in the party of the second part [O'Connell] to extend this contract from year to year provided the party of the second part works said mine continuously from and after the date of this agreement and subject to the terms thereof."

One of the provisions of the contract is: "This contract is not assignable by the party of the second part without written consent of the party of the first part." O'Connell entered into possession of the property and continued to mine and develop same until on or about the 10th day of July, 1935, on which date, becoming in poor health, O'Connell entered into an operating agreement with one George Arnott, by which Arnott agreed to operate the property for O'Connell, and the plaintiff gave its written consent to the operation of the property by Arnott for a period of one year. Soon thereafter, or on August 21, 1935, O'Connell died, and at the expiration of the year terminat-

ing the operating agreement between Arnott and O'Connell, the plaintiff notified Arnott in writing that it would not consent to further operations of the property by him. August 10, 1936, and upon the termination of the year plaintiff had assented to the operation of the property by Arnott, Robert O'Connell, a brother of the deceased, pursuant to an understanding with the heirs of Samuel J. O'Connell, for himself and the other heirs of deceased, assumed control of and continued to operate the property under the lease contract.

October 8, 1936, plaintiff served notice upon the heirs of Samuel J. O'Connell, by registered mail, to the effect that the plaintiff had never consented to any assignment of the contract and, Samuel J. O'Connell being dead, the corporation refused to extend the lease and would re-enter and take possession of the mine on the 10th of November, 1936, and on such date its representatives made demand upon Robert O'Connell for the possession of the property, which demand was refused.

Robert O'Connell, for himself as one of the heirs of Samuel J. O'Connell and on behalf of all the other heirs and upon their request and approval, continued to operate the property with the knowledge of the plaintiff until May, 1937, at which time he was prevented from further operations by a restraining order issued out of the district court of Broadwater county, and the American Smelting & Refining Company at East Helena, Montana, was likewise restrained from making payment to O'Connell of the net proceeds derived from any ores shipped from the leased mine to the smelter for treatment. Thereupon the American Smelting & Refining Company deposited the amount held by it with the clerk of the district court and was dismissed as a party defendant from that action. That action later came up for trial and appears to have been undetermined at the time of the commencement of the present action.

July 27, 1937, Robert O'Connell was appointed administrator of the estate of Samuel J. O'Connell, deceased. The present action was filed in Broadwater county on August 16, 1937. At the same time a temporary restraining order was issued restrain-

ing Robert O'Connell, as administrator of the deceased's estate and individually, from doing or performing any work or making any shipments of ore from the mining property involved, and the clerk of the district court was ordered to keep in his possession any money held by him and involved in the former proceedings.

The foregoing facts in substance comprise the material allegations of the complaint. The answer alleges that Samuel J. O'Connell during his lifetime, and his heirs after his death, had exercised the right of option contained in the lease contract and had from year to year extended such lease, and that all of the terms and provisions of the lease had been complied with, and that Robert O'Connell was holding and operating the property involved as the administrator of the estate of Samuel J. O'Connell, deceased, and as representative and agent of all the heirs of the deceased.

Both of the presiding district judges of the first judicial district having been disqualified, the Honorable C. F. Holt, one of the judges of the eighth judicial district, was called in to try the case. The hearing was had before the judge sitting without a jury, and on January 10, 1938, after considering the evidence adduced at the hearing and reviewing briefs of counsel, findings of fact, conclusions of law and a decree in favor of the defendants were duly made, determined and entered. January 13, 1938, notice of appeal, accompanied by the necessary undertaking on appeal, was filed in the district court. January 17 plaintiff filed exceptions to the findings of fact and requested other specific findings. Exceptions to the findings made and the proposed findings submitted and requested were both denied. The appeal is from the judgment.

Plaintiff specifies ten assignments of error. The first error assigned is on the court's finding that Samuel J. O'Connell died on October 21, 1935, while the record shows the death of O'Connell occurred on August 21, 1935. This assignment of error is obviously a typographical error, but even if not such an error, it is of no particular importance as to whether it was

on August 21 or October 21, as both dates were within a period of time when the lease contract was in effect by extension by Samuel J. O'Connell, and the assignment of error is not material.

The other nine assignments are argued together and, as we view the matter, raise but one vital question: Is the right of renewal from year to year granted by the lease contract to the deceased lessee such a right of property coming into the legal possession of the administrator that he may exercise for the benefit of the heirs at law and pass on to them in the distribution of the estate of the deceased, vesting in them also the right to renew?

Counsel for plaintiff states in his brief: "It is not contended by appellant that respondents are claiming by assignment. * * * It is conceded that if respondents have any right to renew they have acquired the same by succession. The lease does not provide that it is binding upon the heirs, executors, administrators, successors and assigns. We submit that the only importance of this omission is in determining the intent of the parties with reference to creating a perpetuity. Appellant contends that the lease contains two major covenants: 1. It is a lease for two years unless it was forfeited, and, 2. The lease contained a covenant giving the privilege to the lessee to renew or extend. * * * It was a lease with a definite date of expiration and the covenant to renew or extend was between the parties, lessor and lessee." It is further contended that the lessor had in mind the privilege of selecting lessee's successor, and that the provision against assignment except by the written approval of the lessor clearly disproves any intent upon the part of the lessor to create a perpetuity, which inevitably results if the heirs of the lessee acquire by succession the right of renewal, and that if the heirs of the lessee acquired a right to extend or renew, "then the provision in the lease prohibiting assignment is rendered null, void and meaningless." This contention reduces consideration of the controversy to the one question heretofore mentioned.

On the proposition advanced by plaintiff that the lease contains two major covenants, as to the first, that the lease was for two years unless forfeited, there is no question about the specific term of two years, and as to forfeiture the preponderance of the evidence is clearly to the effect that there was no material departure from the terms of the lease by the lessee during the two-year term or during any year of extension. On the contrary, the evidence establishes the fact that the mine was substantially improved and access to the ore bodies largely enhanced by the operations under the lessee as well as under the operations of Arnott. The operations under the latter were, of course, operations under the lessee, O'Connell. The only departure from the terms of the lease was failure of O'Connell to account for the proceeds of some ore shipments just prior to the mine being tied up by litigation which excused performance temporarily as to that obligation of the lessee. The litigation has not resulted in any lien being placed against the mine and, that being so, it does not appear that plaintiff has been damaged or may justly claim forfeiture on the ground of failure to pay the royalty mentioned.

We think the court's Finding No. 6, wherein it is found, "Said O'Connell * * * mined, prospected, developed, rehabilitated the same especially the workings and did continue in possession thereof and did fully comply with all of the terms and provisions of the lease, until the time of his death," is clearly supported by the evidence, and that Finding No. 10, wherein the court found that the terms of the lease were fully complied with while the mine was being operated under the agreement between the deceased and Arnott, is likewise established by the evidence.

As to major covenant No. 2 in the lease, it is contended that the lessor specifically restricted the right of the lessee to assign the covenant to renew, and that such covenant was "between the parties." In substance it is contended that the right of the administrator or heirs to renew renders the restrictive clause as to assignment of the lease meaningless. Defend-

ants, on the contrary, contend that the lease did not terminate on the death of Samuel J. O'Connell. In support of this contention of the defendants they cite *Wheeler* v. *McIntyre,* 55 Mont. 295, 175 Pac. 892, and *Williard* v. *Federal Surety Co.,* 91 Mont. 465, 8 Pac. (2d) 633, on the pertinent point that a lessee's interest is a property right, and that such right passes to the personal representatives of the lessee. Numerous cases are cited to support the contention. The following very generally support the rule that a lease for years on the death of a party is property coming into the possession of deceased's personal representatives, where the contract contains no agreement to the contrary: *Brown's Executor* v. *United States Trust Co.,* 185 Ky. 747, 215 S. W. 815, 8 A. L. R. 1142; *Fortunato* v. *Shenango Limestone Co.,* 278 Pa. 499, 123 Atl. 482; *Israel* v. *Beale,* 270 Mass. 61, 169 N. E. 777, 68 A. L. R. 588; *In re Wartanian's Estate,* 305 Pa. 333, 157 Atl. 688; *Southern Pac. Co.* v. *Swanson,* 73 Cal. App. 229, 238 Pac. 736; *In re Grooms' Estate,* 204 Iowa, 746, 216 N. W. 78; *Johnson* v. *Stone,* 215 Mass. 219, 102 N. E. 366; *Orchard* v. *Wright-Dalton-Bell-Anchor Store Co.,* 264 Mo. 554, 175 S. W. 884; *Walker* v. *Bradley,* 89 Misc. 516, 153 N. Y. Supp. 686, 14 Mills, 53; *Drake* v. *O'Brien,* 83 W. Va. 678, 99 S. E. 280; *Hunter* v. *Frost,* 47 Minn. 1, 49 N. W. 327; *Fulmer* v. *Pacific Southwest T. & S. Bank,* 203 Cal. 693, 265 Pac. 920, 58 A. L. R. 430; *Brownfield* v. *Holland,* 63 Wash. 86, 114 Pac. 890; *Hart* v. *Walker,* 40 N. M. 1, 52 Pac. (2d) 123.

The defendants contend that a covenant against an assignment is not broken by an involuntary alienation or transfer by operation of law. This rule is supported by the following cases, among others: *Farnum* v. *Hefner,* 79 Cal. 575, 21 Pac. 955, 12 Am. St. Rep. 174; *Parks* v. *Union M. Co.,* 14 Ky. Law Rep. 206; *Bemis* v. *Wilder,* 100 Mass. 446; *White* v. *Huber Drug Co.,* 190 Mich. 212, 157 N. W. 60; *Powell* v. *Nichols,* 26 Okl. 734, 110 Pac. 762, 29 L. R. A. (n. s.) 886; *Liquidation of Citizens' Savings & Trust Co.,* 171 Wis. 601, 177 N. W. 905; *Fleming* v. *Fleming Hotel Co.,* 69 N. J. Eq. 715, 61 Atl. 157; *Squire* v. *Learned,* 196 Mass. 134, 81 N. E. 880, 11 L. R. A.

(n. s.) 634, 124 Am. St. Rep. 525, 12 Ann., Cas. 977; *Gazlay* v. *Williams,* 210 U. S. 41, 28 Sup. Ct. 687, 52 L. Ed. 950, 14 L. R. A. (n. s.) 1199, and note; *Charles* v. *Byrd,* 29 S. C. 544, 8 S. E. 1; *Miller* v. *Ready,* 59 Ind. App. 195, 108 N. E. 605, 606.

In the case of *Squire* v. *Learned,* supra, it was said: "It is admitted in all cases that the transmission of the lessee's interest to the administrator of his estate is not a breach of the covenant not to assign. The fact that where the lessee dies intestate there is no voluntary act on his part would be decisive of that if there were no other reason. In such a case the transfer is by operation of law alone."

In *Charles* v. *Byrd,* supra, the court said: "But if the lessor desires to prevent an alienation or transfer of any kind, whether voluntary or involuntary, it is perfectly competent * * * for him to do so by inserting an express provision to that effect in the lease; but, in the absence of any such express provision, a general covenant that the lease shall not be assignable will not be regarded as broken by an alienation *in invitum,* but only by a voluntary transfer."

In the case of *Brown's Executor* v. *United States Trust Co.,* supra, the court there used language which we think clearly expresses the equitable principle to be applied in a case of this kind in the following words: "The death of the lessee should not put the landlord in any better position than he would have occupied if the lessee had not died." No one can contend that if Samuel J. O'Connell had lived and operated the mine in accordance with the terms of the lease he would not have been entitled, as a clear matter of right, to renew the lease from year to year.

Counsel for plaintiff vigorously contends that the contract was a personal one between the plaintiff and Samuel J. O'Connell. The test as to whether a contract is personal or not is as to whether the lessor calls for personal services that only the contracting party can supply. The evidence before us shows that Samuel J. O'Connell had many years' experience in mining, but not such experience and ability that could not have been supplied by many others engaged in such occupation, and

the fact that during O'Connell's illness the plaintiff agreed that Arnott might operate the mine for a year for O'Connell, tends to nullify the contention that O'Connell's personal operation was an exclusive condition of the lease contract which induced the plaintiff to enter into the agreement. In the absence of such a showing to that effect it cannot be maintained that the contract called for only such services as the lessee could furnish. (40 C. J. 1042; *In re Wartanian's Estate*, supra.)

Counsel for plaintiff also vigorously contends that the contract involved is in conflict with the rule on perpetuities. In the case of *Haeffner* v. *Green Fire Brick Co.*, (Mo.) 76 S. W. (2d) 122, the supreme court of Missouri had before it a lease providing for a term of two years, which contained the provision: "In further consideration of this agreement the lessees agree to pay to the lessors the sum of $50.00 per annum for the privilege of renewing this lease from year to year, which said payments shall be considered as advanced royalty, and shall be made within 6 months from the date of this lease, and each and every year thereafter so long as paying minerals are found." In upholding the validity of the lease the court said:

"Where a lease is susceptible of more than one construction, the construction which avoids a forfeiture will be adopted. (13 C. J. 541; *Grossenbacher* v. *Daly*, (Mo. App.) 287 S. W. 781, 782; *Tetley* v. *McElmurry*, 201 Mo. 382, 100 S. W. 37; *Bobb* v. *Frank L. Talbot Theater Co.*, (Mo. Sup.) 221 S. W. 372). * * * The lease here in question, however, plainly provides that the lessee shall pay $50 per annum 'for the privilege of renewing the lease from year to year,' and such payment shall be made 'each and every year thereafter so long as paying minerals are found.' There is, therefore, a plain provision for a renewal of the lease year after year so long as paying minerals should be found and such provision is binding.

"Nor do we agree that the lease is made void because it contains a grant of the right to a perpetual renewal and creates a perpetuity. The right to renew or extend the lease is limited by the clause 'so long as paying minerals are found,' and while this is indefinite, it is not a perpetuity. (35 C. J. 1047, sec.

201; *Hoff* v. *Royal Metal Furniture Co.*, 117 App. Div. 884, 103 N. Y. Supp. 371; Id., 189 N. Y. 555, 82 N. E. 1128; *Van Beuren & New York Bill Post Co.* v. *Kenney*, 60 Misc. 338, 113 N. Y. Supp. 450.) Under the law of this state, and generally, a lease is not made void by a covenant of perpetual renewal. (*Thaw* v. *Gaffney*, 75 W. Va. 229, 83 S. E. 983, 3 A. L. R. 495; *Blackmore* v. *Boardman*, 28 Mo. 420; *Diffenderfer* v. *Board etc. of Public Schools*, 120 Mo. 447, 25 S. W. 542; *Maccalum Printing Co.* v. *Graphite Compendius Co.*, 150 Mo. App. 383, 391, 130 S. W. 836; *Atkinson* v. *Orr*, 83 Ga. 34, 9 S. E. 787; *Banks* v. *Haskie*, 45 Md. 207, 218.)

"Nor do we find any merit in appellant's suggestion that the covenant for renewal of the lease is void for want of consideration. Covenants for renewal are common in leases and we find no case holding that such a covenant is void unless shown to be supported by a consideration separate from and additional to the consideration of the lease itself. Such covenants are a part and parcel of the lease and are supported by the same consideration which supports the lease. The law is stated in 35 C. J. 1011 to be: 'A covenant to renew a lease contained in the lease itself is based on a sufficient consideration and is valid, although unilateral in the sense that the lessee is under no obligation to renew, because such a covenant may well be considered as a material inducement to the execution of the lease.' "
(See also, *Thaw* v. *Gaffney*, supra; *Van Beuren & New York Bill Post Co.* v. *Kenney*, 60 Misc. 338, 113 N. Y. Supp. 450; *Corey* v. *Sunburst Oil & Gas Co.*, 72 Mont. 383, 233 Pac. 909; *Stephens County* v. *Mid-Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; *Rosson* v. *Bennett*, (Tex. Civ. App.) 294 S. W. 660; 25 R. C. L., sec. 40, p. 238; *Rockhill Tennis Club* v. *Volker*, 331 Mo. 947, 56 S. W. (2d) 9; *Becker* v. *Submarine Oil Co.*, 55 Cal. App. 698, 204 Pac. 245.)

The judgment is affirmed.

MR. CHIEF JUSTICE GODDARD and ASSOCIATE JUSTICES STEWART, ANGSTMAN and ANDERSON concur.

MR. JUSTICE ANGSTMAN, Concurring Specially:

In the petition for rehearing it is asserted that the opinion overlooks section 6707, Revised Codes. That section reads as follows:

"No lease or grant of agricultural land for agricultural purposes, for a longer period than ten years, in which shall be reserved any rent or services of any kind, shall be valid; provided, however, that the foregoing provisions shall not be construed as limiting tenancies heretofore or hereafter created under lease, of lands agricultural in character upon the surface thereof, or of lands grazing in character, or of any lode or placer mining claim, timber claim, or lands chiefly valuable for timber or any other purpose, for the purposes of extracting, mining, or otherwise developing coal, minerals, oil, gas, water, mineral, or chemical deposits, or for any mining purpose whatsoever, which leases may be made and granted for a period of ten years, and to run and to hold for such longer or additional time thereafter as any mineral product or other commodity covered by said lease may be found upon or within said lands, or extracted therefrom, in paying quantities."

It is contended by plaintiff that a mining lease cannot be prolonged for more than ten years on the strength of the clause in the statute allowing it to run and hold so long as mineral may be found in paying quantities, unless the lease contains such a clause and by its terms gives it life that long. The lease involved here contained no such clause and, therefore, plaintiff contends that it can have no life beyond ten years.

That question is not involved in the case here, because the ten-year period will not expire until in 1941, and whether the lease may have life thereafter is not before us. As far as I am concerned, I do not now subscribe to anything in the opinion heretofore promulgated that might be construed as holding that the lease in question has or may have life after the ten-year period. I simply reserve my opinion on that point until the

question is before us. With this explanation, I join in denying the petition for rehearing.

Rehearing denied December 20, 1938.