## Louisville Gayety Theater Company v. Ragan.

(Decided January 30, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Landlord and Tenant—Liens on Money From Operation of Business.—Under the provisions of section 2317 of the Kentucky Statutes, a landlord does not have a lien on money taken in from the operation of a business in the leased premises, since such fund is not produce of the premises, nor is such fund the character of personal property mentioned in that section upon which the lien attaches, such personal property meaning only tangible property.

2. Landlord and Tenant—Lien Upon Money Derived From Business. —Neither has the landlord a lien at common law upon such fund, which would prevail over other necessary debts created by the receiver operating the business in or on the leased premises.

3. Receivers—Distribution of Fund Among Creditors.—Where the only funds in the hands of a receiver for distribution are such as he accumulated after his appointment, which funds are insufficient to pay the debts, all of which were created by the receiver and which were necessary in operating the receivership, it is the duty of the receiver to pro rate such funds equally among the creditors.

4. Receivers—Operation of Theater—Receipts.—Where a receiver operated a theater and entered into contracts with amusement companies putting on performances whereby such companies were to receive an agreed percentage of the gross ticket receipts, that percentage vests in and belongs to the company as soon as collected, and does not become a part of the assets of the receivership for distribution.

A. B. BENSINGER and J. V. CONNOR for appellant.

DALLAM, FARNSLEY & MEANS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On January 26, 1917, the appellee, H. C. Ragan, was by the order of the Jefferson circuit court appointed receiver for Adger Amusement Company, a corporation with a capital stock of $2,000.00. The appointment was made pursuant to a motion made for that purpose in the suit of Charles Beute v. The Adger Amusement Company and its other stockholders, which suit was filed to obtain the appointment of a receiver for the corporate defendant.

It was alleged in the petition that the corporation had been organized for the purpose of leasing and operating places of amusement, and that it at that time held a lease on the Gayety theater in the city of Louisville which would expire the following May, and that it had contracts with various amusement companies for performances to be given covering the period of the lease, from which profits would accrue for the benefit of the company, and that one of the defendants, and the principal stockholder in the corporation, Adger Wall, who had been managing the affairs of the defendant corporation, had abandoned it, and declined to further prosecute the business, and that unless a receiver was appointed to operate the theater until the expiration of the lease great loss would

result not only to the corporation but to the plaintiff as a stockholder therein. Further allegations were made that Wall had mismanaged the affairs of the corporation, and had wrongfully appropriated some of its money to his personal use, and a receiver for the corporation was asked for the double purpose of carrying out its contracts and to recover sums wrongfully appropriated by Wall.

The order appointing the appellee directed him to collect and preserve the assets of the corporation, to conduct its business of operating the theater, and to make such contracts and arrangements as might be usual and proper for that purpose, but required him to first obtain the permission of the court in entering into contracts for performances. It also required him to make reports from time to time of his receipts and disbursements, which he did throughout the period of the five weeks which he operated the theater, which terminated on March 3, 1917.

On March 21, 1917, the appellant, Louisville Gayety Theater Company, who owned the building which the amusement company and the receiver operated, filed its intervening petition in the receivership suit, in which it alleged that the lease under which the amusement company was operating the building provided for a forfeiture upon the non-payment of rent, and that at the time of the appointment of the receiver there was rent in arrears to the amount of $3,000.00; that it gave notice of its intention to forfeit at or about the time of the appointment of appellee as receiver, and that he subsequent to that time leased the premises during the receivership at an agreed rental of $250.00 per week; that he had oprated the theater for five weeks and had paid only one week's rent, leaving a balance due appellant of $1,000.00; that it had a superior lien upon the funds (which consisted entirely of proceeds from the sale of tickets) collected by the receiver (a) under the provisions of section 2317 of the Kentucky Statutes, but if mistaken in this then, (b) it had under the common law "an equity for priority" which it insisted prevailed over other operating debts created by the receiver.

It was further alleged that the receiver had paid out all of the funds which came into his hands except $353.53, and it asked that he be directed to pay it that sum, and that it obtain a judgment against him for the balance of its debt.

The questions raised were referred to the court's commissioner, and he reported that the gross receipts of the receiver from operating the theater amounted to $7,974.42, and that there had been expended by him in conducting the receivership business the sum of $7,620.90, leaving a balance in his hands of $353.53. The commissioner found that the appellant had a lien upon the gross proceeds of the receivership under the provisions of section 2317 of the Kentucky Statutes superior to all other operating expenses, and recommended a judgment against appellee for the balance of appellant's debt after crediting it with its pro rata of the $353.53 less some court costs, amounting to $69.00.

Appellant moved the court to confirm the commissioner's report, while appellee filed exceptions to that part of it giving appellant a lien under the statute, or any priority over other creditors of the receiver. The court overruled the motion to confirm the report and sustained the exceptions filed by appellee and adjudged that the net balance of $284.53 be pro rated between other unpaid creditors whose debts amounted to $220.33 and appellant on its $1,000.00 debt, and complaining of that judgment the appellant prosecutes this appeal.

This case has one very distinguishing feature from all other receivership suits that have come under our notice. While on the face of the petition it was made to appear that the corporation whose affairs the court was asked to take charge of possessed some assets, the facts as disclosed by the testimony are that it did not possess one farthing's worth of property, either tangible or intangible. As it turned out, the court appointed a receiver to continue to operate a similar business to that which had been operated by the company for whom the receiver was appointed. He began with nothing and quit with less. And so the ordinary rules governing the distribution of funds of an insolvent in the hands of a receiver as between general and preferred creditors have no application here, because all of the debts are those contracted by the receiver as a part of the necessary expenses of the receivership. The question, then, is—does the law prefer one of those debts above another?

The statute relied on by appellant as giving such preference by lien, under appellant's contention (a) says:

"A landlord shall have a superior lien on the produce of the farm or premises rented, on the fixtures, on the

household furniture, and other personal property of the tenant, or undertenant, owned by him, after possession is taken under the lease; but such lien shall not be for more than one year's rent due or to become due, nor for any rent which has been due for more than eleven months. And if any such property be removed openly from the leased premises, and without fraudulent intent, and not returned, the landlord shall have a superior lien on the property so removed for fifteen days from the date of its removal, and may enforce his lien against the property wherever found.''

It can hardly be said that the ticket receipts would be considered ''produce'' of the leased premises, nor could such receipts be classified as ''fixtures'' or ''household funiture.'' It is insisted, however, that they were ''personal property of the tenant,'' and the landlord's lien attached to the receipts immediately when paid by the patrons of the theater. We are convinced that this construction was never intended by the legislature, but, on the contrary, by the use of the term ''personal property'' in the statute it was meant only to include tangible personal property. If, however, we should be mistaken in this, the lien, if any, by the very terms of the act existed for the benefit of the landlord for only fifteen days from the time of its removal from the premises, and if not attempted to be asserted within that time it was lost, so that if we were to concede that the lien existed on the sum realized from the sale of tickets, and that it was legally possible for appellant to assert it upon the money in the hands of others to whom it had been paid by the receiver, such attempted assertion was not made in this case, and it is now too late. The fact that a lien would have been available if attempted to be asserted in time would not create a personal obligation against the receiver if the landlord by his laches lost the lien; so that in no event is the appellant in a position under the facts of this case to claim as against the receiver a lien under the statute for its debt.

The recent case of Brown's Exor. v. United States Trust Company, 185 Ky. 747, relied on by appellant, does not announce a different doctrine. In that case the property was held by an executor under a lease which had been executed to his decedent, and the leased property was sublet to others, and the court held that the landlord had a lien under the statute, upon the rent due from the

sub-lessees, and that such rent was "produce of the leased premises," as contemplated by the statute. We are not disposed to extend the statute any further than was done in that case. If it should be held that the lien given by the statute attached to the gross receipts of any business which might be conducted in or upon the leased premises, the landlord would be given priority in all cases, under the theory that such receipts constituted "produce of the leased premises" within the contemplation of the statute, and the landlord might thus be enabled to collect his entire rent to the exclusion of all other operating expenses, including fees of officers of the court. We therefore conclude that under the facts of this case the appellant can not claim the right to superiority under the lien provided in the section of the statutes relied on,

Neither are we convinced of the soundness of the argument made in contention (b) by appellant's counsel. In support of that contention counsel cite Tiffany on Landlord and Tenant, section 320; 34 Cyc. 352; High on Receivers 809; Perrin & Smith Printing Co. v. Cook Hotel Co., 93 S. W. R. 337 (an opinion by the St. Louis, Missouri, Court of Appeals), and Link-Belt Machinery Co. v. Hughes, 51 N. E. R. 179, and in attempting to apply the doctrine of those authorities to the facts of this case say in their brief that the courts have "from time to time afforded to landlords various extraordinary remedies for the purpose of preferring their claims over that of other creditors. The decision of the lower court (in this case) is the first instance we have seen where the exact opposite course has been taken, and the claims of all *general creditors* have been preferred to that of landlord."

The quotation from brief illustrates the misconstruction which counsel place upon those authorities, for in all of them the preference of the claim of the landlord over *general creditors* of the insolvent are dealt with, except in the case of Perrin & Smith Printing Co. v. Cook Hotel Company. In that case the landlord's claim was given superiority to operating debts, because and only because he held a contract lien upon the leased property executed by the insolvent before the receivership proceedings, and the court, after reciting the contract lien, said: "This stipulation has attracted our attention; because the rule is that a receiver takes the property of the insolvent debtor subject to all liens on it," and it was held that debts

created by the receiver in operating the property were subject to the prior contract lien of the landlord. The suit involved a contest between the landlord and receivership creditors. No question between the latter class of creditors and the receiver was involved. We therefore conclude that the authorities relied on to sustain the prior equity of appellant are insufficient for that purpose.

In this case, as has already appeared, the debts paid by the receiver were each and all of them necessary in operating the receivership and were contracted by him. The greater portion of the receipts were paid to the companies putting on the performances, which the record shows in many if not all instances were under contracts whereby such companies were given a per cent. of the gross ticket receipts to be paid at the end of each performance. Other debts paid by the receiver were for lights, heat, advertisement in newspapers, janitors, ushers and other necessary help, and also for orchestras at the performances. It is shown that all of the services for which payments were made were not only usual and customary but necessary for the successful operation of a theater, some of which, at least, were as essential as was the leased building. It is not even contended that any payments were made by the receiver for unnecessary expenses. In such cases equity would necessarily require that where the funds were insufficient to pay all of the operating expenses there should be a pro rata between the receivership creditors, and independent of any authority so holding we would be inclined to so construe the rights of the parties under the facts of this case. But in the cases of Pennsylvania Engineering Works v. New Castle Stamping Company, 259 Pa. St. Rep. 378, 103 Atlantic Reports 215; Nessler v. Industrial Land Development Co., 65 N. J. Eq. 491, 56 Atlantic Reports 711, and Gutterson v. Lebanon, 151 Federal Rep. 72, the question as to the right of receivership creditors to participate in the distribution of funds was presented, and it was held that when the funds were insufficient to pay all of them in full there should be a pro rata between them, and necessarily it was held that the receiver had no right to prefer one of them above the others, and that if he did so he would be liable to the one discriminated against. The court in the Pennsylvania case, said: "In such cases

the debts can only be paid pro rata, and if paid in full the receiver will be personally liable.''

In the New Jersey case the receiver, as he did in the Pennsylvania case, made the preference without any order of court (as was also done in this case), and the court said:

''And where, as in this case, the fund in the receiver's hands is not sufficient to pay all the receiver's debts and their compensation, the distribution must be pro rata. They are all and equally debts or claims which should be paid by the trust funds, as expenses of the receivership; and, if the fund is not sufficient to pay all in full, they must be paid pro rata.''

We conclude, then, that the receiver, under the facts of this case, had no right to prefer one of his creditors above another, especially without an order of court to do so, and that he is liable to the appellant and other creditors discriminated against for their pro rata of the distributable fund.

At this point we are met with the question as to what constituted ''the distributable fund'' in the hands of the appellee. As above shown, it appears from the record that some of the companies who gave performances, if not all of them, did so under contracts for an agreed per cent of the gross ticket receipts to be paid at the end of each performance, and the question recurs whether such per cent belonged to the receiver as assets in his hands or whether it became the property of the company as soon as collected at the ticket office. We are inclined to the opinion that such per cent never became the property of the receivership, but on the contrary that the company giving the performance under a contract for a percentage of the receipts became vested with the right to it as soon as the total amount of receipts was ascertained at the end of each performance, and that the contract percentage representing the sums paid to such companies performing under that character of contract, whether they were entered into by the receiver after his appointment or by the corporation before such appointment, were not receivership assets, and that appellee was not guilty of a preference in paying them. By turning over to the company such per cent of the receipts he was but giving to it that portion of them to which it was entitled under its contract. The arrangement created a relation re-

sembling that of a partnership between the company and the receiver, the one agreeing to accept a stipulated per cent of the receipts and the other the remainder. So that it was the duty of the court to ascertain the total amount paid by the receiver to the companies holding such contracts, and deduct that sum from the gross receipts, and then pro rata the balance between the receivership creditors, including the appellant. The record not being in condition to enable us to do this, the case will be remanded for the court to ascertain the facts and to enter a judgment against appellee in favor of appellant as herein directed, taking into consideration its entire debt of $1,250.00 and the payments which it has received, provided any sum is found to be due it under the indicated method of calculation.

Wherefore, the judgment is reversed, with directions to set it aside and to enter one in conformity with this opinion.