NATHAN, APPELLANT, *v*. FREEMAN, EXECUTOR, ET AL., RESPONDENTS.

(No. 5,429.)

(Submitted March 13, 1924.  Decided April 11, 1924.)

[225 Pac. 1015.]

*Executors and Administrators—Claims Against Estate—Statutes of Nonclaim—Construction.*

Executors and Administrators—Statutes of Nonclaim Applicable only to Claims Existent at Time of Death of Decedent.
1.  *Held,* that section 10173, Revised Codes of 1921, providing that claims against a decedent's estate arising upon contracts, whether due, not due or contingent, are barred unless presented to the executor within the time limited in the notice to creditors, and section 10180, declaring that a creditor cannot maintain suit on his claim (excepting a mortgage debt or claim for funeral expenses) unless so presented, have reference only to indebtedness of the deceased contracted by him in his lifetime and existent at the time of death, and therefore have no application to obligations arising subsequent to his death by reason of a breach of an executory contract, such latter obligation becoming by operation of law that of his personal representative.

Same—Executory Contracts of Decedent not Terminated by Death.
2.  An executory contract of a decedent is not terminated by his death but, if capable of being fairly and sufficiently performed by his personal representative, must be completed by the latter in his fiduciary capacity, and if he does not he must pay damages out of the estate.

Same—What Claims not Required to be Presented.
3.  Where decedent lessee of real property to be used for moving picture purposes had bound himself at the termination of the lease to put the building in the same condition it was in before alterations

---

2.  Rent accruing under lease after death of lessee as preferred claim or cost of administration, see note in 8 **A. L. R.** 1146.

made by him and to pay taxes on an addition built by him, and he died before the lease had expired, claims against his estate based upon a breach of the stipulations were not such as were required to be presented to the executor, and therefore the ruling of the court that, not having been presented, the lessor was not entitled to maintain his action for damages for such breach, was error.

Same—When Personal Judgment Against Executor Improper.

4.    Where leased premises were occupied by defendant as executor of the estate of the lessee in his representative capacity, a personal judgment against him was improper.

Same—Statutes of Nonclaim Applicable to Claims for Rentals Under Decedent Lessee's Contract Falling Due After Death.

5.    Claims for rentals falling due under a lease the term of which had not expired at the time the lessee died and the property covering which was thereafter occupied by his executor in his representative capacity, *held* to have been "claims arising upon contracts not due" within the meaning of section 10173, Revised Codes of 1921, which must be presented to the executor within the time specified in the notice to creditors to save them from being barred.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by A. Nathan against Waldo Freeman, executor of the estate of L. E. Freeman, deceased, and others. Plaintiff appeals from the judgment. Reversed and remanded.

*Messrs. O'Leary & Doyle,* for Appellant, submitted a brief; *Mr. W. F. O'Leary* argued the cause orally.

There can be no question under the authorities hereinafter cited, that upon the death of L. E. Freeman the contract remained in force as far as the estate was concerned and that the estate became the assignee of L. E. Freeman, deceased, and was bound by all of the terms and conditions of the lease to the same effect as L. E. Freeman would have been bound had he lived until the expiration of the contract; that being the case, the claim of the plaintiff herein is not based merely on the contract made by the deceased, L. E. Freeman, but upon the new contract that was created by operation of law between plaintiff and the estate of the original lessee upon the lessee's death. The deceased can make a contract that is binding upon his estate after his death. (*In re McIntosh's*

*Estate,* 182 Iowa, 23, 159 N. W. 223; *Leggett* v. *Pelletreau,* 213
N. Y. 237, 107 N. E. 509; *Carley* v. *Lewis,* 22 Ind. 23; *Alsup* v.
*Banks,* 68 Miss. 664, 24 Am. St. Rep. 294, 13 L. R. A. 598, 9
South. 895; *Becker* v. *Walworth,* 45 Ohio, 169, 12 N. E. 1;
*Michigan Iron & Land Co.* v. *Nester,* 147 Mich. 599, 111 N. W.
177.)

By the assignment of the lease to the executor, by operation
of law, he, as executor, and the estate become as thoroughly
bound to the landlord for the performance of the conditions of
the lease as they would have been bound by a lease made by the
executor on behalf of the estate after the death of the deceased.
The assignee is bound by the provisions of the lease. (*Beattie*
v. *Parrot Silver & Copper Co.,* 7 Mont. 320, 17 Pac. 451;
*Coburn* v. *Goodall,* 72 Cal. 498, 1 Am. St. Rep. 75, 14 Pac.
190.)

*Messrs. Freeman, Thelen & Frary,* for Respondent, submitted
a brief; *Mr. Jas. W. Freeman* argued the cause orally.

It is the contention of respondent that the cases cited by
appellant have no bearing upon the real question at hand;
the question being whether or not the estate of L. E. Free-
man can be bound for damages arising out of a contract en-
tered into during his lifetime and which claim for damages
was never presented to the executor within the time allowed
by sections 10173 and 10180, Revised Codes of 1921, after the
first publication of notice to creditors. The statute is manda-
tory and provides the remedy and mode of recovery, and it
must be followed in order for the plaintiff to prevail upon his
claim. (*Vanderpool* v. *Vanderpool,* 48 Mont. 488, 138 Pac. 772;
*Dodson* v. *Nevitt,* 5 Mont. 520, 6 Pac. 358; *Nagle* v. *Ball,* 71
Miss. 330, 13 South. 929; *Brown* v. *Daly,* 33 Mont. 523, 84
Pac. 883; *Melton* v. *Martin,* 28 Mont. 150, 72 Pac. 414; *In re
Higgins Estate,* 15 Mont. 474, 28 L. R. A. 116, 39 Pac. 506;
*Smith* v. *Smith,* 224 Fed. 1, 139 C. C. A. 465.)

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted to recover the total sum of $14,536 alleged to be due the plaintiff on certain lease contracts of a building in the city of Great Falls. After issue had been joined by the pleadings, the parties stipulated as to the facts and the cause was submitted to the court for decision. The court found that the plaintiff is entitled to recover from Waldo Freeman as the executor of the estate of L. E. Freeman, deceased, and Waldo Freeman personally, the sum of $731.89 principal and interest for rent due, and against the plaintiff on his additional demands. Judgment was entered accordingly, and the plaintiff has appealed.

It appears that on April 1, 1912, the plaintiff and one L. E. Freeman, now deceased, entered into a lease agreement whereby L. E. Freeman leased a certain storeroom known as the "Cobb Block," for a period of five years at $175 per month, payable in advance, same to be used for a moving picture or vaudeville show house. Privilege was given the lessee to renew the lease for an additional period of five years at $200 per month, provided notice of his intention to so renew was given at least six months prior to April 1, 1917. Further, it was agreed that the lessee should place the floor "in the old part of said building in the same condition * * * as the same was at the time he took possession thereof, provided the first party (the lessor) desires the second party (the lessee) so to do, and that the second party (the lessee), if the first party (the lessor) so desires, shall replace a similar front in said building of the same kind that was in the building at the time the second party (the lessee) originally rented said premises. And that the said replacing of said front and replacing of said floor and all the expense incident thereto to replace said building in the same way it was in at the time that the second party (the lessee) originally rented the same shall be paid at the expense of the party of the second part (the lessee), and if the second party fails to replace said floor and front, if the first party

[70 Mont. 259.]

(the lessor) so desires, then the first party may do so and collect the cost therefor from the party of the second part (the lessee).''

A supplemental agreement was entered into, the date of which is not shown, by virtue of which the lessee, L. E. Freeman, was given permission to build an addition to the leased premises at his own expense, which, when completed, was to become a part of the building and be the property of the lessor; it being provided that, if in consequence of the construction of such addition the lessor is assessed a greater sum on the property, the lessee, L. E. Freeman, agreed to pay the increase in the assessment above the amount that the building was then assessed, and further agreed that upon demand of the lessor he would pay such assessment to the lessor.

Upon the execution of the lease April 1, 1912, L. E. Freeman ''entered into the possession and occupancy'' of the premises under the lease and the renewal thereof and the supplemental contract, and remained in possession until on or about the twenty-sixth day of April, 1919, upon which date he died, the lease, renewal thereof, and supplemental agreement being all then in full force and effect.

It is admitted that, after the death of L. E. Freeman, Waldo Freeman retained possession of the leased property until on or about November 25, 1921, but it is averred that he did so as the executor of the last will and testament of L. E. Freeman, deceased. Further it is agreed that:

After the death of said L. E. Freeman, and before the appointment of Waldo Freeman as executor, there was no change in the occupation of the premises, and that during such period the picture theater operated by L. E. Freeman before his death was continued in the premises under the management of defendant Waldo Freeman. That defendants Waldo Freeman and Carrie L. Freeman are the heirs of L. E. Freeman, deceased, and his son and widow respectively. That upon the death of L. E. Freeman, Waldo Freeman was on or about the

seventh day of May, 1919, by an order of the district court appointed executor of the last will and testament of L. E. Freeman, deceased. That thereafter and on the seventh day of May, 1919, Waldo Freeman duly qualified as such, and on that date letters testamentary were duly issued to him, and that ever since he has been and now is the duly appointed, qualified and acting executor of the last will of L. E. Freeman, deceased. That after his appointment as such executor he occupied the leased premises up to on or about the twenty-fifth day of November, 1921, and paid the rent stipulated in the lease to be paid up to the first day of August, 1921, and that thereafter no rent has been paid on the premises by the defendants under the lease or otherwise. That on the twenty-fifth day of November, 1921, the plaintiff because of the default in the payment of rent re-entered and took possession of the premises, and elected to cancel the lease pursuant to the terms thereof.

That at the time L. E. Freeman took possession of the premises, there was in the premises a wood floor in good condition and repair and constructed as floors are ordinarily constructed in buildings used for store purposes; and that there was at that time a front in the building in good condition and repair and constructed of brick and glass as is ordinarily used for fronts in buildings used for store purposes; and that, when L. E. Freeman took possession of the premises, he removed from the building the floor, and placed therein instead a sloping floor, constructed of wood, as is ordinarily used in buildings used for moving picture purposes, and removed the front from the building, and constructed a front therein fit only to be used in a building used as a moving picture theater. That on the twenty-eighth day of November, 1921, the plaintiff notified the defendants above named that he, the plaintiff, desired them to replace in the building a level floor of the kind and in as good condition and repair as there was in the building at the time L. E. Freeman took possession thereof, and to replace in the building a front of the kind and in as good condition and repair as

was the front of the building at the time L. E. Freeman entered into the possession of the premises. That the defendants and all of them refused to comply with such request in any manner whatsoever, and failed to replace the front and floor of the building. That at the time of such refusal by the defendants, and at all times thereafter, the reasonable cost of replacing the front and floor of the building as provided in the lease was and is the sum of $1,500. That under the terms of a supplemental agreement L. E. Freeman constructed upon the leased premises a building on account of which plaintiff was assessed and paid taxes for the years 1920 and 1921 in the sum of $57.97 and $58.61 respectively.

That Waldo Freeman, as the executor of the will of L. E. Freeman, deceased, published, according to law, a notice to creditors of the estate in the "Great Falls Daily Tribune," a newspaper of general circulation, published in Cascade county, pursuant to an order of the court made and entered in the matter of the estate of L. E. Freeman, deceased, according to law, to present their claims to the executor at rooms 14–16 in the Conrad Bank Building in the city of Great Falls, the same being the place for the transaction of the business of the estate in the county of Cascade, within ten months after the first publication of the notice. That notice to creditors was so published the first time on the seventeenth day of June, 1919, and thereafter for four successive weeks. That none of the claims herein sued upon and set forth in the complaint in this action, nor any claim of any kind or character arising out of the lease, supplemental agreement or the renewal of the lease, as set forth and described in plaintiff's complaint, or otherwise, or at all, was ever presented by the plaintiff or by anyone for and on his behalf. That the lease was included in the list of assets in the inventory and appraisement returned by the defendant Waldo Freeman as such executor, as follows: "Gen. Lease April 1, 1917, to Apr. 1, 1922—$ nil." That between November 25, 1921, and April 1, 1922, the premises were not rented by plain-

tiff, and remained vacant, and no rent was derived by the plaintiff therefrom, and that during that period plaintiff was unable to rent the premises or to secure a tenant therefor at a rental exceeding $150 per month.

Upon the admitted facts plaintiff complains that the trial court erred in deciding that he is not entitled to a judgment against the defendants: (a) For damages for failure to replace the front and floor in the leased premises; (b) for money expended by him for taxes upon the addition to the premises under the terms of the contract; (c) for damages for loss of rent because of breach of the lease.

It is apparent that the court figured Waldo Freeman, as executor and personally liable only for the rentals computed to be due during the period of occupancy by Waldo Freeman from August 1, to November 25, 1921, during which time rent was not paid. As to plaintiff's other rights asserted, evidently the court proceeded upon the theory that the plaintiff's recovery was barred under the statute of nonclaim. The question of the necessity of presenting a claim to the executor within the time prescribed by statute, as a condition precedent to plaintiff's right of recovery against the estate, alone is raised and argued by counsel.

It is provided by statute: "All claims arising upon con-
[1]  tracts, whether the same be due, not due, or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever. * * * " (Sec. 10173, Rev. Codes 1921.) And further: "No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto where all recourse against other property of the estate is expressly waived in the complaint." (*Id.*, sec. 10180.)

These statutes are plain and unambiguous, but have reference only to the indebtedness of a deceased person, contracted by him in his lifetime, and then existing, whether due, not due or contingent, excepting mortgage debts (*Id.*, sec. 10173), and funeral expenses specified as a preferred claim against the estate of a decedent (*Id.*, sec. 10307). They can have no application to obligations arising subsequent to the death of a person because of existing executory contracts. Obligations, arising by virtue of a contract after the death of the party to be held to performance, by operation of law become those of his personal representative in the fiduciary capacity of the latter. In our opinion these statutes of nonclaim have reference to an indebtedness existing at the time of the decedent's death, not to such as arise subsequently by reason of a breach of the executory contracts of the deceased. Claims existing before death are in one category, and those arising subsequently in another. The former must be presented or they are barred forever, while the latter class are incident to the administration of the estate. The claims required to be presented by the statute as a condition precedent to the maintenance of an action thereon are existing demands against a decedent at the time of his death. That which has become due on the contract during the lessee's lifetime is of the character of demands which must be presented to the executor within the time fixed by the statute, but as to such as arise subsequently, during the life of the lease contract, the executor alone is liable either personally or in his representative capacity, dependent on the facts. The lease under consideration runs to L. E. Freeman, "his heirs, executors, [2] administrators and assigns," but whether it did or not is of no consequence, as the law requires that the personal representative of a decedent after his death shall fulfill his executory contract. The contract continued in force, and was not terminated by the death of the lessee.

In 11 Cal. Jur., p. 970, the rule is stated, based on California decisions, in the following language: "Where a contract is

executory, and the personal representative can fairly and sufficiently perform all the deceased could have performed, he may do so and enforce the contract. Conversely, the personal representative is bound to complete such a contract, and, if he does not, he may be made to pay damages out of the estate.''

The correct principles applicable are well stated by the court of appeals of Kentucky as follows: ''It is well settled by the authorities that a contract of this character is not terminated by the death of the lessee, and that his estate continues liable for the performance of the conditions of the lease until it expires. It is also generally agreed that the obligation of a lessee under the contract passes on his death to his personal representative, who assumes in his fiduciary capacity the performance of the contract in the same manner that its performance could have been demanded of the lessee [citing cases]. * * * In other words, the personal representative takes the place in the contract of his deceased lessee, and assumes in his fiduciary capacity all the liability that the lessee assumed in entering into the contract.'' (*People's Bank & Trust Co.* v. *United States Trust Co.,* 185 Ky. 747, 8 A. L. R. 1142, 215 S. W. 815; see, also, 16 R. C. L., p. 855; 24 C. J. 53.)

From what we have said as to the law governing it is apparent that the trial court was in error in denying the **[3, 4]** plaintiff the right to recovery of damages for failure to replace the front and floor of the building, and for money expended by him for taxes on the addition to the leased premises. These several items of liability arose after the death of the lessee, and the defendant Waldo Freeman, as executor, is chargeable therewith in his representative capacity. By continuing business in the leased premises as his own he might become personally liable on the lease contract in whole or in part. However, from the agreed statement of facts, it appears that after the death of L. E. Freeman the leased premises were occupied by the defendant Waldo Freeman as the executor of the last will and testament of L. E. Freeman, so that a personal judgment

against Waldo Freeman was not proper. Unless other facts are made to appear, on a new trial the cause should proceed to judgment against Waldo Freeman in his representative capacity only.

The judgment is reversed and the cause remanded to the district court of Cascade county for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Stark concur.

## On Motion for Rehearing.

MR. JUSTICE GALEN delivered the opinion of the court.

After a careful study and consideration of the plaintiff's motion for a rehearing and the argument of counsel and authorities cited in support thereof by respective counsel, we have modified the opinion as originally written by the elimination of certain words and the addition of others. The opinion as thus amended has been rewritten, and is now expressive of the views of this court. Accordingly the motion for a rehearing is denied.

This modification arises because of our present view entertained, after further consideration of the statutory provisions, that rentals to become due under the lease contract are obligations of such nature that they must be presented as required by the statute of nonclaim. They appear to be "claims arising upon contracts * * * not due." Not so, however, as to the amounts claimed for taxes assessed after the death of the lessee and accruing after the time limit for the presentation of claims by creditors, nor as to the cost of replacing the floor or the front of the building, which did not arise until the breach of the contract by the nonpayment of rent, long after the expiration of the ten months' period within which creditors were required to present their claims to the executor. Neither do we consider such claims as "contingent"

within the intention of the law-making body in the enactment of the statute. The word "claims," as employed in the statute, has reference only to those which existed against the lessee at the time of his death, not to such as subsequently arose during the administration of his estate. As to any amount of taxes due and unpaid by Mr. Freeman in his lifetime under the contract they clearly would have constituted claims due against his estate in contemplation of the statute, but there was no possible way to estimate the amount of taxes subsequently to be assessed or basis to assume that such as were levied would not be paid. Such obligations arose during the process of administration of the estate, and so likewise as to the replacement of the floor and the front of the building. In order to create an obligation upon Freeman to pay the cost of replacing the floor or front at all (1) the leasehold period must have first terminated, or (2) Freeman must have abandoned the lease before the expiration of the term, or in either event (3) Nathan was required to elect to have them replaced. Until the contractual obligations of the deceased had at least a potential existence, they could not be classed as claims of "creditors of the decedent." (Sec. 10107, Rev. Codes 1921.)

Mr. Chief Justice Wade, speaking for this court in *Dodson v. Nevitt*, 5 Mont. 518, 6 Pac. 358, said: "Claims against the estate are those in existence at the date of the death of the deceased. * * * Claims against an estate must be presented * * * for allowance." Further, the learned Chief Justice observed that the claims required to be presented in contemplation of the statute of nonclaim are such as exist "at the time of the death of the deceased" or grow out of a contract, act, or omission of a decedent during his lifetime. (Approved in *First National Bank* v. *Collins*, 17 Mont. 433, 52 Am. St. Rep. 695, 43 Pac. 499; and distinguished in *Re Williams' Estate*, 47 Mont. 325, 132 Pac. 421.)

However persuasive the decisions of California may be upon the interpretation of like statutes, our statute having been

adopted from that state, we refuse to follow them blindly, especially so where the reasoning and conclusions in such decisions do not appeal to our judgment.

The California court in a case involving facts like unto those under consideration here reached a conclusion in the interpretation of the statute to which we cannot and do not subscribe. The case is that of *Verdier* v. *Roach,* 96 Cal. 467, 31 Pac. 554. There it appears that the lessor covenanted in the lease agreement to indemnify the lessee of a building against damage by reason of the overflow of water during the term of the lease contract. The lease was to run for a term of nine years and ten months. After it had been in existence about two years, the lessor died and an administrator of his estate was thereafter appointed with expedition. Publication of notice to creditors was regularly made, but the lessee presented no claim within the ten months' limit. More than two years after the expiration of the ten months' period allowed for the presentation of creditors' claims against the estate of the lessor, plaintiffs sustained substantial damages by a leak or overflow of water, which caused damage to their goods in the leased storeroom. Upon this state of facts it was held under statutory provisions identical with our own that the lessee could not maintain an action to recover such damages, not having presented a claim against the decedent's estate within the period prescribed in the notice to creditors. Such a conclusion, to our way of thinking, is an absurdity. There is no way on earth by which the happening of the event could have been anticipated, nor by which the possibility of its occurrence could have been foreseen, nor was it possible in advance to determine the nature, character or extent of the resulting damage. We cannot and will not give indorsement to such a construction of the statute.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and STARK concur.