**In re ESTATE OF Annie Mai MINTON,
Deceased, Appellant,**

v.

**Claim of Joseph C. MARKHAM,
Appellee.**

Supreme Court of Tennessee.

Dec. 14, 1981.

James L. Bass, Nashville, for appellant.

J. L. Thompson, III, Nashville, for appellee.

## OPINION

HARBISON, Chief Justice.

On April 11, 1979, appellee Joseph C. Markham filed a claim against the estate of Annie Mai Minton, of which he had been appointed one of the co-administrators. The claim was for various services to the decedent and her husband between the years 1960 and 1976 and for services performed upon the property of decedent through the year 1978. The total amount of the claim was $95,557.05.

Decedent died on February 10, 1976, and Letters of Administration were issued to appellant and Arnold J. Minton, a son of the decedent, on May 14, 1976. On May 25, 1976, the first notice to creditors of the estate was published.

A motion to strike and expunge the claim of appellee was filed on behalf of beneficiaries of the estate upon the ground that the same was not timely filed within six months from the date of notice to creditors as required by T.C.A. § 30–513. The Probate Court sustained the motion. The Court of Appeals reversed and held that under the unusual facts of this case appellee's claim did not come into being and was not in effect until the conclusion of litigation between heirs of the decedent and himself. That litigation concluded on December 29, 1978, when this Court denied a petition to review a decision adverse to appellee and Arnold J. Minton. The Court of Appeals held that appellee had six months from the date of the decree of this Court within which to file his claim against the estate and that the claim therefore was not barred.

We are unable to agree with this conclusion for the reasons hereinafter stated.

Appellee Markham befriended the elderly decedent, Annie Mai Minton, and her husband prior to the death of the latter in 1969. Thereafter until the death of Mrs. Minton in 1976 he, with financial assistance from Arnold J. Minton who lived in another state, cared for and attended to the personal needs of Mrs. Minton and the operation and maintenance of a twenty-one acre farm owned by her. He lived in the residence of Mrs. Minton and was, according to the claim filed by him, almost solely responsible for her care, including extensive personal nursing after she underwent a colostomy three years prior to her death.

On October 11, 1972, Mrs. Minton executed a deed to her property to appellee Markham and to her son Arnold J. Minton as tenants in common, reserving a life estate for herself. The deed recited a nominal cash consideration and other consideration, including services rendered to the grantor "in assisting me and taking care of me." The deed was recorded and was not attacked by relatives of Mrs. Minton until after her death. On the date of the death of decedent, therefore, appellee asserts with considerable logic that he had no "claim" of any sort against Mrs. Minton, the deed to an undivided one-half interest in the property representing payment, or satisfaction, for any claim which he might have had for the value of services rendered to Mrs. Minton and for improvements upon the property.

Nine days after the first notice to creditors of the estate was published, however, another son and daughter of the decedent filed suit in chancery against appellee and Arnold J. Minton, seeking rescission of the deed and restitution of the property to the heirs of Mrs. Minton. The real estate conveyed to appellee and Arnold J. Minton in 1972 represented the only asset of substantial value belonging to the decedent. After lengthy litigation in the Chancery Court, a decree adverse to the grantees of the deed was entered. The Chancellor found that the deed was "a gift" and that a confidential relationship existed between the grantor and grantees, raising a presumption that the deed was invalid. He found that the grantees had not rebutted that presumption by the evidence offered. On appeal, in an opinion dated March 31, 1978, the Court of

Appeals concurred in the findings of the Chancellor setting aside the deed. There being a concurrent finding of fact by the two courts, the Supreme Court denied review on December 29, 1978, concurring in the results only.

█ It does not appear that at any time in the litigation over the deed appellee Markham or his co-grantee, Arnold J. Minton, ever asserted any sort of counterclaim or that they sought to impose any kind of lien upon the real estate for improvements made or benefits conferred. It is, of course, well established in this state that when a deed to real property is rescinded, the grantee is entitled to recover the purchase price or other consideration paid for the deed. Under certain circumstances he may also recover the value of any improvements to the property and may have a lien fixed thereon to secure the same. *See generally Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn. 1978); *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295 (1947); *Wright v. Dufield*, 61 Tenn. 218 (1872).

We need not at this time consider whether the failure of appellee to assert a lien or a counterclaim in the deed litigation precludes his present claim, nor whether any of the findings and conclusions in that litigation might constitute collateral estoppel against the claim for services now being asserted. The sole issue concerns the timeliness of the filing of the claim.

T.C.A. § 30–510 provides as follows:

"Within six (6) months from the date of the notice to creditors, required by § 30–509, all persons, resident and nonresident, having claims against the estate of the decedent, whether the claimant be sui juris or otherwise, and whether the claim be due or not due, and whether the estate be solvent or otherwise, shall file them in duplicate with the clerk of the court in which the estate is being administered."

In the case of *Woods v. Palmer*, 496 S.W.2d 474 (Tenn.1973), the Court concluded that this provision constituted a statute of limitations, rather than a statute of proscription.[1] Regardless of how the statute is denominated, however, in the numerous cases construing it, it has uniformly been held that the statute was designed to expedite the administration of estates and to provide a uniform procedure in connection therewith.

█ In cases prior to the enactment of this statute in 1939, it had been held that contingent or immature claims were not required to be filed until their maturity, even though this might be many years after the opening of the administration of the estate. *See, e.g., Marshall v. Hudson*, 17 Tenn. 57 (1836) (surety held liable on note of decedent entitled to file claim for reimbursement against estate long after expiration of regular period for filing). The language of the 1939 statute is sweeping and requires the filing of claims which are contingent and not matured.

█ Assuming the validity of appellee's argument, however, that he in fact had no existing claim on the date of the death of the decedent because he held a deed from her in "satisfaction" of the value of his services rendered, nevertheless the heirs of the decedent declared the deed rescinded and sought a decree to cancel it by the suit filed on June 3, 1976. It seems to us that when the complaint was served on the appellee in that case, from that time he knew, or surely must have known, that the deed was being attacked as being invalid. Long before that time he had rendered the services for which he now seeks compensation. In our opinion, therefore, he was obligated to file a contingent claim against the estate of the decedent no later than six months after he was served with the complaint if he wished to obtain a judgment against the

---

1. In earlier cases the statute had sometimes been referred to as a "non-claim" statute. *See Windsor Hosiery Mills, Inc. v. Haren*, 222 Tenn. 479, 483, 437 S.W.2d 248, 250 (1969); *Wilson v. Hafley*, 189 Tenn. 598, 607, 226 S.W.2d 308, 312 (1949); *Alamo Development Corp. v. Thomas*, 186 Tenn. 631, 633, 212 S.W.2d 606, 607 (1948); *Collins v. Ruffner*, 185 Tenn. 290, 293, 206 S.W.2d 298, 300 (1947); *Commerce Union Bank v. Gillespie*, 178 Tenn. 179, 193, 156 S.W.2d 425, 430 (1940).

estate of decedent. *See Eslick v. Friedman*, 191 Tenn. 647, 660, 235 S.W.2d 808, 814 (1951) (beneficiary of will which had been set aside was required to file claim against estate of decedent for value of services rendered prior to his death, this being the "exclusive remedy"). Of course, had he sought to have a lien imposed upon the land for the value of any improvements thereon, he should have asserted that claim in the deed litigation itself.

As stated previously, T.C.A. §§ 30–510 and 513 have been treated as statutes of limitations and not statutes of proscription. Nevertheless when one who did not previously know that he had an actionable claim discovers or reasonably should discover that such a claim exists, the statute of limitations begins to run against him. *Teeters v. Currey*, 518 S.W.2d 512 (Tenn.1974). It is not necessary that a claimant have exact or precise information as to the extent of his damages to set the statute in operation, so long as it is reasonably apparent that he has an actionable claim. *Taylor v. Clayton Mobile Homes*, 516 S.W.2d 72 (Tenn.1974).

▆ Rescission of a deed is accomplished by a declaration of rescission followed by a prompt court action to achieve that purpose. *See Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn.1978) and authorities cited therein; *see also* 2 *Gibson's Suits in Chancery* § 993 (5th ed. A. Crownover, Jr., 1956). We cannot agree with appellee's contention that he was entitled to wait until final disposition of the rescission action in the court of last resort before being required to file a contingent claim against the estate of the decedent. The statute requires such filing "whether the claim be due or not due." The deed upon which appellee relies was declared rescinded by the suit filed on June 3, 1976, and appellee knew this when served with a copy of the complaint if not before. Certainly at that time he had to take some action to claim the value of services which had long since been rendered to the decedent, either by filing a counterclaim and

seeking a lien in the deed litigation or by filing a claim against the estate of decedent (of which he was an administrator) or both. Apparently he simply defended the validity of the deed as an arms' length transaction and took no action to protect himself in the event the deed was cancelled for fraud, undue influence or abuse of a confidential relationship.

In view of the policy of the 1939 statutes requiring prompt filing of claims against estates of deceased persons, whether matured or not,[2] we are of the opinion that appellee was required to file his claim timely after being served with the complaint in the deed litigation and that his failure to do so for nearly three years prevents its assertion now. *Cf. Lockett v. Dermid*, 26 Tenn. App. 588, 174 S.W.2d 660 (1943) (legatee under will not excused from filing contingent claim against estate of decedent by reason of the pendency of a will contest, and claim filed after conclusion of that litigation held untimely).

The judgment of the Court of Appeals is reversed and the judgment of the probate court dismissing the claim is reinstated at the cost of appellee. The cause is remanded to the probate court for entry of any further orders which may be necessary.

COOPER and FONES, JJ., and HUMPHREYS, Special Justice, concur.

BROCK, J., dissents.

BROCK, Justice, dissenting.

The plaintiff, Markham, filed against the estate of Annie Mai Minton, deceased, a claim totaling $95,557.05 for the value of personal services rendered, monies advanced and personal property furnished to Annie Mai Minton during several years in which the plaintiff lived with Mrs. Minton and endeavored to take care of her. Upon motion, the probate judge denied and struck from the record the plaintiff's claim on the ground that it was not filed as required by T.C.A., § 30–513, which provides:

---

2. Referred to as a "peremptory requirement" in *Hooper v. Neubert*, 53 Tenn.App. 233, 238, 381

S.W.2d 569 (1963).

"*Limitation on time of filing claims.*—All claims and demands not filed with the county or probate court clerk, as required by the provisions of §§ 30–509—30–512 or in which suit shall not have been brought or revived before the end of six (6) months from the date of the notice to creditors, shall be forever barred."

The plaintiff appealed from this judgment to the Court of Appeals which in a two to one decision reversed the judgment of the probate court, and held that the plaintiff's claim was not barred by the above quoted statute. We granted permission to appeal from that judgment.

The factual basis for this controversy is well stated in the opinion of the Court of Appeals as follows:

"Appellant Markham admits that he did not file his claim within the first six months after notice to creditors in this case, which occurred on May 25, 1976, but argues that he had no claim until December 29, 1978, on which date the Tennessee Supreme Court denied certiorari in a case from the Davidson County Chancery Court setting aside a deed from decedent Annie Mai Minton to appellant and one of decedent's sons. Appellant argues that for him the period of limitation should not be deemed to start running until the date the Supreme Court denied certiorari, from which time he had a claim based upon the consideration he gave for the deed which the court set aside, and that his filing within six months of such time was therefore timely.

"The deed in question was to a twenty-one acre farm which was the home place of decedent Annie Mai Minton. Mrs. Minton executed the deed on October 11, 1972, to appellant Markham and to her son Arnold J. Minton as tenants in common, reserving a life estate for herself. The consideration recited in the deed was ten dollars, 'love and affection, and other good and valuable considerations including grantees' services to me in assisting me and taking care of me.' Appellant had for some years prior to the execution of the deed aided Mrs. Minton in many

ways and continued to do so until her death in 1976.

"Appellant had originally made the acquaintance of Mrs. Minton and her husband in 1958, when he bought a farm near theirs. He thereafter grew to have a closer relationship with them, helped them in numerous instances, and in 1968 moved in with them. His relationship with them he describes as being 'like a son.' After Mr. Minton's death in 1969, he remained at the Minton farm and cared for the ailing Mrs. Minton until her death. The services appellant performed for the Mintons he lists in his brief as 'including, but not limited to' the following:

"... furnishing between twenty-five (25) and thirty-five (35) ricks of firewood for fifteen (15) years, mowing and bush-hogging twenty (20) acres three (3) times a year, clearing trees by chainsaw and ax, repairing the house of Mr. and Mrs. Minton, the chicken house, barn, fences, feed troughs, loading shoot, gates, and then personally caring for Mrs. Minton on a daily basis for four (4) years before her colostomy operation and for three (3) years after her colostomy operation, and even paying for Mr. Minton's funeral expense, for the grave markers for Mr. and Mrs. Minton, and finally purchasing household furniture, appliances, and paying for certain medical and hospital bills...."

"Mrs. Minton died on February 10, 1976. On May 14, 1976, the Probate Court of Davidson County denied the application for letters of administration of Miller C. Minton, one of Mrs. Minton's sons, and appointed Arnold J. Minton and appellant as co-administrators. On May 25, notice to the creditors of the estate was duly published. There was apparently very little in the estate, as Mrs. Minton's only property of substance was the farm she had earlier deeded to appellant and Arnold Minton.

"On June 3, 1976, Miller C. Minton and Marie Minton Hogan, Mrs. Minton's daughter, filed suit in Davidson County

Chancery Court against the co-administrators to set aside the deed from Mrs. Minton to Arnold Minton and appellant. Trial in this action was held in March, 1977, and resulted in the deed being set aside. The trial court specifically found that Mrs. Minton had made a gift by deed of her farm to appellant and Arnold Minton, that a confidential relationship existed between donor and donees thereby raising a presumption that the gift was invalid, and that the donees had not satisfied the burden of proving that no advantage was taken of the donor. The court then held that 'the gift fails and is invalid.'"

Thereafter, the decree of the Chancery Court was reviewed by the Court of Appeals which affirmed it and this Court denied certiorari review on December 29, 1978. On April 11, 1979, the plaintiff Markham filed the instant claim against the estate of Mrs. Minton. As mentioned above, this claim was stricken by the probate court but the judgment of the probate court was reversed by the Court of Appeals in a two to one decision holding that since the plaintiff's claim did not arise until after the death of Mrs. Minton and until after expiration of the six months period from the date of the notice to creditors, the six months period of limitations prescribed by T.C.A., § 30–513, had no application and, therefore, that the claim was not barred.

Statutes identical or substantially equivalent to T.C.A., § 30–513, hereinabove quoted, have been considered by some courts as statutes of non-claim and by other courts as statutes of limitation. *See* 34 C.J.S. *Executors and Administrators* § 397 (1942) and cases there cited. The distinction is more than one of words. A non-claim statute imposes a "condition precedent" to the enforcement of a right of action, whereas, a statute of limitation creates defenses that must be pleaded and may be waived. It appears that approximately an equal number of courts favor each view. For us, however, it appears that the issue has been recently settled by this Court in an opinion written by former Justice Humphreys in *Woods v. Palmer*, Tenn., 496 S.W.2d 474

(1973). Justice Humphreys, writing for a unanimous Court, said:

"The filing of a claim against an estate amounts to a demand for payment and is equivalent to the commencement of an action. *Wilson v. Hafley*, 189 Tenn. 598, 608, 226 S.W.2d 308.

"The filing of the claim within the time and in the manner prescribed by the statute operates to arrest any statute of limitations applicable thereto. § 30–512 T.C.A.

"The nine months (now six months) period for filing claims is referred to in Tennessee Code Annotated as a statute of limitations. § 30–512 T.C.A. Phillips Prichard Law of Wills and Administration of Estates refers to the nine months period for filing of claims as a statute of limitations. § 743(6). Section 30–513 T.C.A., which provides for the limitation on the time for filing claims was amended, Acts of 1971, to Chapter 229, Sec. 3, so as to decrease the time for filing claims from nine months to six months, but the language of the statute remains that of a statute of limitation; providing, that claims not filed within six months from the date of notice to creditors 'shall be forever barred.' Finally, in *State v. O'Brien*, 200 Tenn. 475, 292 S.W.2d 733, this Court held that § 30–513 T.C.A., as a statute of limitation, did not apply to the sovereign, the State of Tennessee, following prior holdings of this Court to that same effect in *State v. Smith*, 194 Tenn. 582, 253 S.W.2d 758, and *Commerce Union Bank v. Gillespie*, 178 Tenn. 179, 156 S.W.2d 425.

"From all of this we must conclude that §§ 30–510 and 30–513 provide only a statute of limitation affecting only the remedy, and are not statutes of proscription." 496 S.W.2d at 475–76.

Upon petition to rehear, the Court adhered to its original position as follows:

"Petition to rehear has been filed making the same contention which we have already considered, that § 30–513 T.C.A. is a statute of proscription and not a statute

of limitation. The contention is also made that the proceedings in the Probate Court were such as to preclude appellant Woods from reliance on § 28–106 T.C.A. "With respect to the first proposition, it is sufficient to say that serious consideration was given to this question, and the conclusion was judiciously reached by the entire Court that § 30–513 T.C.A. consistent with all of the authority, is a statute of limitation and not a statute of proscription. We find nothing in the petition to rehear that persuades us to depart from that holding." 496 S.W.2d at 477.

Therefore, in construing T.C.A., § 30–513, and in determining its application to the facts of this case, I consider that it is a statute of limitations and not one of proscription or non-claim.

Does the statute bar the instant claim which was not filed against the estate until more than six months had expired following the date of notice to creditors? I would hold that it does not.

The claim did not arise and the plaintiff had no claim of any kind against the estate until long after the six months limitation period had expired. His claim did not arise until the decree of the Chancery Court, depriving him of his interest in the twenty-one acre farm deeded to him and Arnold J. Minton as tenants in common, became final. *McCroskey v. Bryant Air Conditioning Company*, Tenn., 524 S.W.2d 487 (1975); *Ameraccount Club, Inc. v. Hill, et al.*, Tenn., 617 S.W.2d 876 (1981). *See also, Hayes v. Ferguson*, 83 Tenn. 1, 54 Am.Rep. 398 (1885). Until that judgment became final, there was no eviction of the plaintiff either actual or constructive. Until that time he could not have maintained an action against anyone for the relief sought in this case. It was only when the deed to the twenty-one acres was set aside that there was an unjust enrichment to the estate of the deceased grantor.

I would hold that the statute does not apply to claims which are non-existent during the six months period of limitations. The statute refers to all persons "having claims against the estate." "Claim" as used in T.C.A., § 30–510, "refers to debts or demands against the decedent which might have been enforced by personal actions for the recovery of money, . . . ." *Wright v. Universal Tire, Inc.*, Tenn.App., 577 S.W.2d 194 (1978). During the six months period at issue in the instant case the claimant had no debt or demand against the decedent which might have been enforced. During that time the plaintiff had no challenge to ownership of the property and it was not being wrongfully withheld from him. It was pointed out in *Collins v. Ruffner*, 185 Tenn. 290, 206 S.W.2d 298 (1947) that T.C.A., § 30–510, refers to three types of claims, viz., (1) a written instrument, (2) a judgment or decree of court or (3) by open account. In the instant case, during the six months period following the notice to creditors, the plaintiff did not have any claim falling within any one of the three categories; indeed, he had no claim at all.

My view that T.C.A., §§ 30–510 and 30–513, do not apply to causes of actions accruing only after the decedent's death is supported by the rationale of *Collins v. Ruffner, supra*, and *Coin Automatic Company v. Dixon's Estate*, 213 Tenn. 311, 375 S.W.2d 858 (1963). In *Collins*, the Court held that the statute does not encompass tort claims, since a party who has a right of action for tort cannot be deemed "a creditor" until he obtains a judgment. The decedent could not be considered a "debtor" by reason of the tort until there was a court judgment against him. In the *Coin Automatic Company* case, *supra*, the Court held that the statute does not include a "claim" for unliquidated damages for breach of a covenant not to compete. The Court considered that such "claims" should be distinguished from typical contract cases because the damages that arise are very uncertain, as in tort cases, unlike the typical contract case in which, if the executor fails to timely except to the claim, a judgment can simply be entered.

For cases from other jurisdictions holding that statutes substantially equivalent to T.C.A., § 30–513, do not apply to claims which do not arise until after the death of

the decedent, see *Burdick v. Kerkovecz*, 81 Cal.App. 786, 254 P. 684 (1927); *Nathan v. Freeman, et al.*, 70 Mont. 259, 225 P. 1015 (1924); 31 Am.Jur.2d *Executors and Administrators* § 277 (1967); 34 C.J.S. *Executors and Administrators* § 401 (1942). In the *Burdick* case the California court, in holding that a claim was not barred by the limitations statute, said:

> "Plaintiff contends, also, that defendants' right to the return of said money is barred because they failed to present a claim therefor against the estate of her deceased father. The default in the performance of the contract did not occur, however, until after her father's death, from which it follows that defendants had no valid claim against his estate." 254 P. at 686.

In the *Nathan* case, *supra*, the Montana court, in reaching a conclusion that a claim was not barred by the period of limitations, said:

> "These statutes are plain and unambiguous, but have reference only to the indebtedness of a deceased person, contracted by him in his lifetime, and then existing, whether due, not due, or contingent, excepting mortgage debts . . . and funeral expenses specified as a preferred claim against the estate of a decedent. . . . They can have no application to obligations arising subsequent to the death of a person because of existing executory contracts. Obligations, arising by virtue of a contract after the death of the party to be held to performance, by operation of law become those of his personal representative in the fiduciary capacity of the latter. In our opinion these statutes of nonclaim have reference to an indebtedness existing at the time of decedent's death, not to such as arise subsequently by reason of a breach of the executory contracts of the deceased. Claims existing before death are in one category, and those arising subsequently in another." 225 P. at 1017–18.

Based upon the wording of the statute itself, our own prior decisions and those of other courts, as well as upon justice and equity, I would hold that the instant claim is not barred by T.C.A., § 30–513. Accordingly, I respectfully dissent from the opinion and judgment of the Court.