IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2024 Session

## JOE H. EDWARDS v. ANGELA L. UNDERWOOD

**Appeal from the Chancery Court for Bradley County**
**No. 2020-CV-419    Jerri S. Bryant, Chancellor**

### No. E2023-00640-COA-R3-CV

Property owners retained a licensed engineer to develop subdivision lots. As partial compensation for his services, the engineer agreed to accept a 6% share of the gross proceeds when the lots were sold. The agreement was to be binding on the property owners' heirs and assigns. After both owners died, ownership of the remaining unsold lots passed to a daughter through probate. She sold some of the lots without payment of the engineer's 6% share. The engineer sued the daughter for breach of contract and unjust enrichment. Among other things, the daughter argued that the engineer's action was barred by the probate statutes. The trial court held that the engineer's 6% share was secured by a statutory lien on the real property and its proceeds and that such lien was not subject to any affirmative defenses. After careful review, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Bradley County Chancery Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON II, J., joined.

Andrew J. Brown, Cleveland, Tennessee, for the appellant, Angela Underwood.

Joshua H. Jenne, Cleveland, Tennessee, for the appellee, Joe H. Edwards.

## OPINION

### I.

Joe Edwards agreed to develop real property known as the Sterling Pointe subdivision on behalf of his longtime friends, Courtney and Betty McGrady. The McGradys could not afford to pay Mr. Edwards's usual rate for commercial development services. So the parties agreed to a deferred compensation arrangement under which the

McGradys paid Mr. Edwards a lower rate up front plus a 6% share of the gross sale proceeds from each lot as and when the lots were sold. Mr. Edwards and the McGradys memorialized their agreement in two instruments, each titled "Affidavit Regarding Sales Proceed Sharing." Both affidavits were recorded in the Register's Office for the county in which the property was located. In similar language the two affidavits provided that

> the Owners, as part of the consideration being given … agree to pay Joe H. Edwards the sum of six percent (6%) of the gross sales price for each of these parcels of land, or portions thereof, as the same shall sell and the money is collected for said sale; and . . . the parties understand and agree that this agreement shall be binding upon the undersigned Owners, their heirs and/or assigns and shall become effective upon the date of the signing of this Affidavit.

Mr. Edwards developed the lots, and as they were sold, the McGradys paid him his share of the proceeds. Courtney McGrady died in 2003, followed by his wife in 2012. At her death, Mrs. McGrady was the sole owner of the remaining Sterling Pointe lots. Her last will and testament directed that her real property be administered as part of the estate subject to the control of the personal representative. *See* Tenn. Code Ann. § 31-2-103 (2021). Pursuant to the will, the personal representatives transferred ownership of the Sterling Pointe lots to Angela Underwood, Mrs. McGrady's daughter. Between 2014 and 2020, Ms. Underwood sold seven Sterling Pointe lots. But she only paid Mr. Edwards 6% of the gross sales price for two of the lots.

On December 20, 2020, Mr. Edwards sued Ms. Underwood for recovery of $88,500.00 in damages for breach of contract or unjust enrichment. Ms. Underwood asserted multiple affirmative defenses, including two statutes of limitation and the statute of frauds. She also filed a counterclaim seeking the return of the funds she had already paid.

At trial, Mr. Edwards described the work he did to develop and improve the Sterling Pointe lots. Because finances were tight, he agreed to accept a share of the gross sales proceeds on future sales as partial compensation for his services. This arrangement worked smoothly during the McGradys' lifetimes. When lots were sold, the McGradys paid Mr. Edwards his share of the proceeds. Mr. Edwards, in turn, signed and recorded documents acknowledging the partial satisfaction of the McGradys' debt and releasing his interest in the sold lots. After Ms. Underwood inherited these properties in 2014, he received a 6% share of the proceeds from the sale of two lots, one in 2015 and another in 2020. He recorded partial releases of his interest in those lots as before. But, at some point, Mr. Edwards discovered that Ms. Underwood had not paid him in connection with the sales of five additional lots.

2

Ms. Underwood did not dispute the quality of Mr. Edwards' work. But she insisted that she had no obligation to honor the McGradys' agreement with Mr. Edwards. She was not a party to the affidavits. As she explained, she only paid Mr. Edwards because she was "on the cusp of financial ruin." She contended that his sole recourse was against the McGradys. And he never filed a probate claim.

The trial court granted judgment to Mr. Edwards in the amount of $88,500.00 plus prejudgment interest and dismissed Ms. Underwood's counterclaim. In so doing, the court rejected her affirmative defenses. It held that Mr. Edwards's right to a 6% share of the proceeds from sales of the Sterling Pointe lots was not a "claim" subject to the probate process. Instead, it concluded that his right was secured by a statutory lien on specific property. *See* Tenn. Code Ann. § 66-11-102 (2022). And he was entitled to enforce his rights against the heir who received that property from the estate.

**II.**

Ms. Underwood raises three issues on appeal. First, she argues that the trial court erred in holding that Mr. Edwards's 6% interest in the sale proceeds is secured by a lien pursuant to Tennessee Code Annotated § 66-11-102. Second, she claims that his rights and remedies are barred by at least one of two statutes of limitation. *See id.* § 30-2-310(a) (2021); *id.* § 28-3-109 (2017). Finally, she argues that his remedy is barred by the statute of frauds applicable to guarantee agreements. *See id.* § 29-2-101(a)(2) (2024).

Our review of the trial court's judgment following a non-jury trial is de novo upon the record with a presumption of correctness as to the trial court's findings of fact unless the evidence preponderates against those findings. *See* TENN. R. APP. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). Our standard of review of legal issues, such as contract interpretation and statutory interpretation, is de novo with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017); *Lazar v. J.W. Aluminum*, 346 S.W.3d 438, 441-42 (Tenn. 2011).

A.

This case turns on the nature of Mr. Edwards's interest in a share of the proceeds from the sale of Sterling Pointe lots. The trial court held that Mr. Edwards's interest was secured by a statutory lien on the Sterling Pointe lots under Tennessee's mechanics' and materialmen's lien statute. *See* Tenn. Code Ann. § 66-11-102. This statute imposes a lien "on any lot or tract of real property upon which an improvement has been made, by contract with the owner or the owner's agent, in favor of [a land surveyor or licensed engineer] . . . for . . . services performed." *Id.* § 66-11-102(b), (c)(1). Recording a copy of the written contract in the local register of deeds office is sufficient to provide notice of the lien to third parties. *Id.* § 66-11-111 (2022). Once attached, the lien continues for one year after

3

the work is completed or abandoned. *Id.* § 66-11-106 (2022). Any action to enforce the lien must be filed within the one-year period. *Id.*

Given the time limits on mechanics' and materialmen's liens, Mr. Edwards had no remedy under that statute. The requirements for establishing and enforcing a statutory lien must be construed strictly, yet not so strictly as to frustrate the legislative purpose. *Gen. Elec. Supply Co. v. Arlen Realty & Dev. Corp.*, 546 S.W.2d 210, 213 (Tenn. 1977); *Winter v. Smith*, 914 S.W.2d 527, 544 (Tenn. Ct. App. 1995). Even if Mr. Edwards's right to payment was protected by this statutory lien at one time, that protection lapsed long before he filed this action. *See* Tenn. Code Ann. § 66-11-106. Mr. Edwards completed his work in 2009. And he did not file a timely enforcement action. *See id.* § 66-11-126 (2022).

Mr. Edwards cites the affidavits as the source of his remedy. But the affidavits merely reflect an unsecured debt. As partial compensation for Mr. Edwards's work, the McGradys agreed to pay him a share of the proceeds from future sales. Nothing more. The McGradys never expressly granted Mr. Edwards an interest in the Sterling Pointe lots. Nothing in the affidavits suggests that the parties intended for these lots to serve as collateral for the McGradys' debt. *Compare Rick v. Middle Tenn. Med. Ctr., Inc.*, No. M2000-01662-COA-R3-CV, 2003 WL 1797952, at *7 (Tenn. Ct. App. Apr. 7, 2003) (finding no evidence that decedent intended for real property to secure a debt), *with Ewing v. Smith*, No. 85-294-II, 1986 WL 2582, at *6 (Tenn. Ct. App. Feb. 26, 1986) (finding clear evidence that the parties intended to enter into a secured loan transaction). The mere fact that the affidavits were recorded does not change the plain meaning of the parties' words.[1] *See Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002) (presuming "[t]he intent of the parties . . . to be that specifically expressed in the body of the contract").

### B.

Ms. Underwood contends that this action is barred because Mr. Edwards failed to file a timely claim against Mrs. McGrady's estate. As she sees it, Mr. Edwards seeks payment for services provided to Mrs. McGrady. Creditors must file all claims arising

---

[1] Courts may impose an equitable lien when the "instrument purporting to create . . . a lien is incomplete or otherwise falls short of actual creation." *Ewing*, 1986 WL 2582, at *6. "An equitable lien is a right, not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the payment of a particular debt." *Greer v. Am. Sec. Ins. Co.*, 445 S.W.2d 904, 907 (Tenn. 1969). But resorting to equity would not be appropriate here for two reasons. First, Mr. Edwards has not asked for such relief. *See Milam v. Milam*, 200 S.W. 826, 828 (Tenn. 1918) (explaining that an equitable lien "is a floating equity until action by the court is invoked"). Second, this record lacks clear evidence that the parties intended "to make the particular property, real or personal, a security for the obligation." *Greer*, 445 S.W.2d at 907 (quoting *Milam*, 200 S.W. at 828).

4

from a debt of the decedent within 12 months of the decedent's death. Otherwise, the claims are "forever barred." *See* Tenn. Code Ann. §§ 30-2-307, -310(a) (2021).

Mr. Edwards concedes that he never filed a probate claim. He argues that he did not have an actionable claim when Mrs. McGrady died. Although that may be so, it did not excuse his failure to file a claim against the estate.

The nonclaim statute[2] broadly applies to all claims or demands arising from a debt of the decedent, whether matured or unmatured. *Id.* § 30-2-306(b) (2021); *see also* Tenn. Code Ann. § 30-2-317(d) (2021) (directing the personal representative to set aside sufficient funds or assets to pay unmatured claims). Even claims based on contingent liabilities must be filed by the statutory deadline. *Minton's Est. v. Markham*, 625 S.W.2d 260, 262 (Tenn. 1981); *In re Est. of Price*, No. E2004-02670-COA-R3-CV, 2005 WL 3159771, at *7 (Tenn. Ct. App. Nov. 28, 2005). Mr. Edwards sought payment for services he provided to the McGradys before their deaths. Granted, no payment was due until lots were sold. But that simply meant that the claim was contingent and unmatured. *See In re Est. of Price*, 2005 WL 3159771 at *7. Contrary to Mr. Edwards's protests on appeal, "exact or precise information as to the extent of [a claimant's] damages" is not required "to set the statute in operation, so long as it is reasonably apparent that he has an actionable claim." *Minton's Est.*, 625 S.W.2d at 263.[3]

Mr. Edwards insists that even if his claim against the estate is barred, he may pursue his contract remedies against Ms. Underwood. *See Boatman v. Morrison*, 746 S.W.2d 706, 708 (Tenn. Ct. App. 1987) (reasoning that the nonclaim statute "only bars claims against [an] estate and does not bar a creditor who may have other legal remedies"); *Commerce Union Bank v. Weis*, 181 S.W.2d 764, 767 (Tenn. Ct. App. 1944) (noting that creditor was entitled to look to joint obligor and the secured collateral for satisfaction of a debt after declining to file a claim against the debtor's estate). The nonclaim statute does not apply to actions for specific performance or "claims for specific property coming into the hands of personal representatives." *Wright v. Universal Tire, Inc.*, 577 S.W.2d 194, 196 (Tenn. Ct. App. 1978). But that is not what we have here. The affidavits did not grant Mr. Edwards an interest in specific property.

---

[2] "Statutory enactments barring claims which are filed against an estate beyond a certain time period frequently are referred to as 'nonclaim' statutes." *Bowden v. Ward*, 27 S.W.3d 913, 918 (Tenn. 2000).

[3] Under a former version of the nonclaim statute, our supreme court recognized some exceptions to the application of the statute. *See Coin Automatic Co. v. Dixon's Est.*, 375 S.W.2d 858, 861-62 (Tenn. 1963) (claim for unliquidated damages arising from alleged violation of covenant not to compete); *Collins v. Ruffner*, 206 S.W.2d 298, 300-01 (Tenn. 1947) (tort claims not yet reduced to judgment). Mr. Edwards's claim does not fall within these previously recognized exceptions.

Mr. Edwards places undue significance on the language in the affidavits purporting to bind the McGradys' heirs and/or assigns. The inclusion of this language may well evidence an intent for his agreement with the McGradys to "survive the death of one of the parties." *Williamson Cnty. Broad. Co., Inc. v. Intermedia Partners*, 987 S.W.2d 550, 553 (Tenn. Ct. App. 1998); *see also Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 721 (Tenn. Ct. App. 1998). But it does not follow that the agreement is enforceable against Ms. Underwood. There is no evidence that she was a joint obligor on this debt. *Cf. Commerce Union Bank*, 181 S.W.2d at 767 (finding widow liable to note holder where she was joint obligor of the debt). She did not expressly assent to be bound by the agreement. *Cf. Rodgers v. S. Newspapers, Inc.*, 379 S.W.2d 797, 798 (Tenn. 1964) (widow accepted assignment of late husband's contract rights and signed an amended contract). Nor did she inherit property that was encumbered with this debt. *Cf. Jenkins Subway, Inc.*, 990 S.W.2d at 721 (holding that decedent's heir could enforce a contract after his death, in part, because the contract "embodied certain property rights which passed to Rose Jenkins upon the death of Ed Jenkins").

In sum, we conclude that the nonclaim statute bars Mr. Edwards's action. To preserve his right to payment, he was required to file a claim against Mrs. McGrady's estate within the statutory deadline. He failed to do so. And nothing about the nature of his claim excused his noncompliance with the probate statutes. Our conclusion pretermits Ms. Underwood's remaining issues.

### III.

The trial court erred in holding that Mr. Edwards's right to payment was secured by a lien on specific property in the hands of Ms. Underwood. We conclude that Mr. Edwards's claim was subject to the probate process. Because he failed to comply with the statutory deadline, this action is time barred. We reverse the trial court's decision and remand for further proceedings consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE